1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10   GERARDO  ORTEGA,  ALFREDO )        Case No.  2:07-cv-08336 FMC-JCx
     SALVATIERRA, and MICHAEL D. )
11   PATTON, individually and on behalf of )
     themselves, all others similarly situated, )   ORDER   GRANTING   PLAINTIFFS'
12   and the general public,              )        M O T I O N   F O R   C L A S S
                                          )        CERTIFICATION
13                                        )        AND
                      Plaintiffs,         )        ORDER   STAYING   PORTION   OF
14                                        )        ACTION   PENDING   CALIFORNIA
     vs.                                  )        SUPREME   COURT   RULING   ON
15                                        )        MEAL AND REST BREAK ISSUES
     J.B. HUNT TRANSPORT, INC., an )
16   Arkansas corporation; and DOES 1 to )
     100, inclusive,                      )
17                                        )
                      Defendant.          )
18                                        )
                                          )
19   _____)

20          The matter is before the Court on Plaintiffs' Motion for Class Certification

21   (docket no. 59), filed on March 16, 2009.  The Court has read and considered the

22   moving, opposing, and reply documents submitted in connection with this motion.

23   The Court deems the matter appropriate for decision without oral argument.  *See*

24   Fed. R. Civ. P. 78; Local Rule 7-15.  The hearing scheduled for May 11, 2009, was

25   removed from the Court's calendar.  For the reasons and in the manner set forth

26   below Plaintiffs' Motion is GRANTED.

27   *///*

28   *///*

     *///*

# I. EVIDENTIARY RULINGS

The Court has reviewed and considered each of the statements detailed in Defendant's Objections to Evidentiary Submissions by Plaintiffs. Defendant objects to various statements in the Ortega, Patton, and Saltzman Declarations as lacking foundation and representing improper opinion testimony or a legal conclusion. Defendant's objections are OVERRULED. Each of the twenty-one (21) statements to which Defendant objects represents proper lay opinion testimony for which an adequate foundation is laid.  To the extent that a handful of the statements may be susceptible to being read as purporting to state legal conclusions, *e.g.,* Def's Objection Nos. 7, 13, 17, 21 (stating that breaks were not "provided" and that no "conflict of interest" exists), the Court considered only the general, lay sense of the legal terms of art contained in those statements.

Similarly, Plaintiffs' Objections to Defendant's Evidence Submitted in Support of Opposition are OVERRULED.  Plaintiffs object to four statements in the Garcia Declaration and seven statements in the Regaldo Declaration as lacking foundation and representing improper opinion testimony or a legal conclusion.  The statements articulate the factual basis for Defendant's position in this suit, and each statement to which Plaintiffs object represents proper factual background or lay opinion testimony for which an adequate foundation is laid.

The Request for Judicial Notice in Support of Defendant's Opposition is GRANTED only to the extent that the Court takes judicial notice of the existence of the twenty-one (21) "orders from various state and federal courts in California" attached thereto.  *Cf. California ex rel. Lockyer v. Mirant Corp.*, 266 F.Supp.2d 1046, 1053 (N.D.Cal. 2003) (finding judicial notice public documents filed in various antitrust cases was appropriate because the documents were part of the public record but noting that "[in taking judicial notice of these documents, the court does not adopt their factual findings or holdings; it simply acknowledges their existence and contents").  In all other respects, the Request for Judicial Notice is DENIED

1  because it is not the appropriate device for introducing and arguing that the Court's
2  decision should be guided by binding or persuasive legal precedent.  The Court
3  considered only those legal arguments presented by Defendant in its memorandum
4  of points and authorities.

5      Finally, although no good cause was shown for Defendant's late submission
6  of Judge Larson's recent unpublished opinion in cases involving similar legal issues,
7  attached to Defendant's April 29, 2009 Notice of Lodging in Opposition to
8  Plaintiffs' Motion for Class Certification,[1] the Court declines to strike the Notice of
9  Lodging.  The Court has read the opinion and finds that it does not alter the Court's
10  analysis or conclusion regarding the instant Motion.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

12  This action arises out of the compensation system of Defendant J.B. Hunt
13  Transport, Inc. ("Defendant"), a motor carrier that transports freight and property
14  to customers nationwide.  Since 2002, Defendant has employed that system to pay
15  Plaintiffs, nearly 6,000 local and regional truck drivers previously or currently
16  employed by Defendant as Intermodal and Dedicated Contract Services ("DCS")
17  drivers.[2]  Plaintiffs maintain and Defendant does not dispute that the
18  compensation system at issue in this case consists of three key components that
19  apply to both Intermodal and DCS drivers:

20      (1) Mileage Pay:  for distances actually driven, drivers are
21      paid on a per-mile basis for distances actually driven;

22      (2) Activity-Based Pay:  for certain activities (*e.g.,* loading or
23      unloading) drivers are paid a predetermined amount pursuant to

---

26  [1]Briefing on this matter closed on April 27, 2009.

27  [2]Intermodal drivers generally deliver freight to and from railways, and DCS
28  drivers are assigned to deliver freight for one particular customer.

1    Defendant's Activity Based Pay ("ABP") system;[3] and

2              (3) Hourly Pay:  for certain periods of time and activities (*e.g.,*

3    time in excess of 1.5 or 2 hours spent waiting to be assigned a load,

4    time spent in training or going through orientation), drivers are paid

5    on an hourly basis.

6    The parties do not dispute that pay is *not* separately allocated for certain times or

7    tasks, *e.g.,* for the first 1.5 or 2 hours a driver spends waiting to be assigned a

8    load, time a driver spends fueling trucks, or time a driver spends filling out

9

10   _____

11   [3]Defendant describes the first two components of the compensation system as
     follows:

12
               Defendant's activity-based compensation system is a lawful piece
13   rate system that uses miles and stops as a proxy for work performed; it
     is intended to cover *all* activities incident to a delivery.  The mileage rate
14   includes pay for all activities incident to a delivery, including those
     required by the DOT (*i.e.*, time spent conducting the pre-trip and post-
15   trip inspections of the drivers' trucks, time spent completing the required
     DOT log books). [Regaldo Decl., ¶14; Garcia Decl.,¶6].  This type of
16   piece rate pay is the recognized method of paying drivers in the trucking
     industry.
17
18   Def's Opp'n at 7:1-8 (emphasis in original).  Defendant further explains the purpose
19   and intended effect of the 2002 transition to the new compensation system as follows:

20             When the decision was made to change to an activity-based
     compensation system which would pay drivers based upon a mileage rate
21   plus extra activity-based pay, the intent was to have the complete
     replacement of hourly wages.  The idea was to make sure that drivers
22   would receive the same base amount they had been receiving under the
     hourly system, but with the ability to earn much more money if they
23   were more efficient.  This concept has been proven true, as many drivers
     concede that they made at least as much, if not substantially more,
24   money under the current compensation system despite the fact that they
25   perform the same tasks and work the same hours.
26
27   *Id.* at 7:23-8:6 (internal citations omitted).

28                                          4

1   paperwork at the end of a shift.[4]  Similarly, Defendant does not dispute that

2   Defendant has used an on-board computer system ("OBC system") in its trucks

3   and into which drivers enter at least some of their activities; however, Defendant

4   has not used the OBC system to track or schedule breaks.  Pls' Mot. at 11:21-12:4

5   (citing Jan. 9, 2009 Graves Depo. at 29:11-19, 110:15-20).  Nonetheless,

6   Defendant maintains that, taken together, the components of its compensation

7   scheme cover all payment obligations Defendant has to individual drivers in any

8   given day.

9        On November 19, 2007, Plaintiffs initiated this litigation in Los Angeles

10  Superior Court.  On December 27, 2007, Defendant filed its Notice of Removal.

11  Nearly a year later, on November 17, 2008, Plaintiffs filed a First Amended

12  Complaint ("FAC").

13       With this litigation, Plaintiffs seek damages based on allegations that

14  Defendant's payment practices:

15                a. Failed to pay Plaintiffs minimum wages or agreed rates for

16

17  ───────────────────

18       [4]The parties dispute wether Defendant's compensation scheme is intended to,
    and does in fact, provide pay for breaks.  Plaintiffs take issue with a correction made
19  to the deposition testimony of Robert Schoenberger, Defendant's Regional Operations
    Manager for Intermodal Operations at the South Gate Facility.  At his deposition,
20  Schoenberger's response to the question "And to your knowledge the drivers are not
    paid for rest periods; is that correct?" was "They are not."  Salzman Decl.
21  Authenticating Exhibits in Suppt. of Pls' Mot. ("Salzman Decl."), Ex. 3
    (Schoenberger Depo.) at 110:15-17.  However, a subsequent correction replaced the
22  original response with following language:  "There is not a specific amount that is
    paid to drivers for rest periods.  Pay for rest periods is generally included within and
23  covered by the overall mileage rate paid to drivers."  Salzman Decl., Ex. 7 (Feb. 23,
    2009 letter from Scott Lindman).  However, as is discussed below, the parties' dispute
24  on this point raises a merits issue that the Court does not reach in the context of ruling
    on this motion regarding class certification.
25

26

27

28

1  all hours worked;

2          b.  Failed to provide Plaintiffs proper meal and rest periods;

3          c.  Failed to furnish Plaintiffs accurate itemized wage

4  statements;

5          d.  Failed to timely pay Plaintiffs all wages due them at the

6  time of their termination; and/or

7          e.  Subjected Plaintiffs to unfair business practices within the

8  meaning of [California Business and Professions Code] §§ 17200 *et*

9  *seq.*

10  FAC ¶ 10.

11          The Court notes that Plaintiffs do not articulate a class definition in their

12  Motion.  However, the FAC identifies the "relevant time period" as beginning

13  four years prior to the filing of the original complaint in this action, continuing at

14  the present time, and expected to continue through to the time of trial in this case.

15  FAC ¶ 3.  The FAC also includes the following class definition: "All of

16  Defendants' California-based, local and regional intermodal and local and

17  regional DCS drivers who worked for Defendants during the Relevant Time

18  Period ("Covered Position").  The definition excludes over-the-road drivers."

19  FAC ¶ 19.  The FAC also goes on to state that "Plaintiffs further seek to establish

20  one subclass, the Labor Code § 203 Subclass, which is defined as all Class

21  members who worked in a Covered Position during the Relevant Time Period and

22  who are no longer employed by Defendants herein."  FAC ¶ 20.  However,

23  neither Plaintiffs nor Defendant make any mention of this "subclass" in the their

24  briefing in connection with this motion.  The Court treats this as a motion to

25  certify the following class:  All of Defendant's California-based, local and

26  regional intermodal and local and regional DCS drivers who worked for

27

28                                                  6

1  Defendant in the four years prior to the filing of the original complaint in this

2  action and/or through to the time of trial in this case.  The definition excludes

3  over-the-road drivers.

4  ### III.  APPLICABLE LEGAL STANDARD

5  "Before certifying a class, the trial court must conduct a 'rigorous analysis'

6  to determine whether the party seeking certification has met the prerequisites of

7  Rule 23." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir.

8  2001) (citing *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1233 (9th Cir.

9  1996)).  The party seeking class certification bears the burden of demonstrating

10  that each of the four requirements of Rule 23(a) and at least one requirement of

11  Rule 23(b) has been met.  *Dukes v. Wal-Mart, Inc.*, 474 F.3d 1214 (9th Cir.

12  2007).

13  Pursuant to Federal Rule of Civil Procedure 23, one or more members of a

14  class may sue as representative parties on behalf of the entire class only if all of

15  the following four elements are met:

16  (1) the class is so numerous that joinder of all members is

17  impracticable; (2) there are questions of law or fact common to the

18  class; (3) the claims or defenses of the representative parties are

19  typical of the claims or defenses of the class; and (4) the

20  representative parties will fairly and adequately protect the interests

21  of the class.

22  Fed. R. Civ. P. 23(a).[5]  In addition, the Court must find that one of the conditions

23  of Rule 23(b) has been satisfied.

24

25  [5]The four requirements for class representatives are commonly referred to by

26  the following shorthand labels, respectively: (1) numerosity, (2) commonality, (3)

27  typicality, and (4) adequacy.

28

Here, Plaintiffs seek certification pursuant to Rule 23(b)(3), which provides that a class action may be maintained if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).[6]

In deciding whether to grant class certification, "[t]he court is bound to take the substantive allegations of the complaint as true, thus necessarily making the class order speculative in the sense that the plaintiff may be altogether unable to prove his allegations." *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975).

## IV. DISCUSSION

Plaintiffs contend that class certification is appropriate because all four of the prerequisites set forth in Rule 23(a) are met and because class certification is appropriate pursuant to 23(b)(3).

Defendant expressly states that it does not dispute that Rule 23(a)'s numerosity, commonality and adequacy prerequisites are satisfied in this case. Def's Opp'n at 11 n.3. Additionally, despite Plaintiff's concession that minor variations exist among DCS drivers assigned to different accounts, Defendant does not mount a challenge to Plaintiffs' showing that the Rule 23(a)'s typicality prerequisite is satisfied.[7] However, Defendant contends that 23(b)(3) cannot be

---

[6]The two requirements for certification pursuant to Rule 23(b)(3) are sometimes referred to as "predominance" and "superiority."

[7]"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class. 'Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought.' " *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Weinberger v. Thornton*, 114 F.R.D. 599, 603 (S.D.

8

1   satisfied in connection with certain claims, and Defendant raises a number of
2   other objections. The Court finds that Rule 23(a)'s prerequisites are satisfied and
3   considers Defendant's other challenges in turn below.

4   **A. Rest and Meal Break Claims**

5   ### 1. Rule 23(b)(3) "Predominance"

6   "The Rule 23(b)(3) predominance inquiry tests whether proposed classes
7   are sufficiently cohesive to warrant adjudication by representation." *Amchem*
8   *Prods. v. Windsor*, 521 U.S. 591, 623 (1997); *see* also Fed. R. Civ. P. 23(b)(3)
9   (providing that a class may be certified where "the court finds that the questions
10  of law or fact common to class members *predominate* over any questions
11  affecting only individual members, and that a class action is superior to other
12  available methods for fairly and efficiently adjudicating the controversy"
13  (emphasis added)). "Implicit in the satisfaction of the predominance test is the
14  notion that the adjudication of common issues will help achieve judicial
15  economy." *Valentino*, 97 F.3d at 1234.  Common questions of law and fact
16  predominate over individual questions, satisfying the first component of the Rule
17  23(b)(3) inquiry, where "the issues in the class action that are subject to
18  generalized proof, and thus applicable to the class as a whole, . . . predominate
19  over those issues that are subject only to individualized proof." *Wal-Mart Stores,*
20  *Inc. v. Visa U.S.A. Inc. (In re Visa Check/Mastermoney Antitrust Litig.)*, 280 F.3d
21  124, 136 (2001).  In evaluating predominance, the Court looks to whether the
22  focus of the proposed class action will be on the words and conduct of the

23  ─────────────────────

24  Cal. 1986)).  To satisfy the typicality element, Plaintiffs must demonstrate that both
    they and their claims are typical of the class. *Dukes*, 509 F.3d at 1183.  Representative
25  claims are typical of the class "if they are reasonably coextensive with those of absent
26  class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

27

28                                      9

defendants rather than on the behavior of the individual class members.  *See, e.g.,* *In re Lorazepam & Clorazepate Antitrust Litigation*, 202 F.R.D. 12, 29 (D.D.C. 2001) ("As is true in many antitrust cases, the alleged violations of the antitrust laws at issue here respecting price fixing and monopolization relate solely to Defendants' conduct, and as such proof for these issues will not vary among class members." (internal citation and quotation marks omitted)); *Iron Workers Local No. 17 Ins. Fund v. Philip Morris, Inc.*, 182 F.R.D. 523, 539-40 (N.D. Ohio 1998) (finding that individual issues did not predominate where defendants "engaged in a common course of misrepresentations designed to affect all plaintiffs in a like fashion"); *In re Corrugated Container Antitrust Litig.*, 80 F.R.D. 244, 250 (S.D. Tex. 1978) ("Whether the proof ultimately adduced will establish the existence of a national conspiracy among the defendants is not in issue here; it is not the court's function to weigh this evidence for its truth but merely to ascertain whether it is of a type suitable for classwide use.  The court is persuaded that the conspiracy issue . . . is susceptible of generalized proof, since it deals primarily with what the defendants themselves did and said.").

Here, Defendant argues that individual issues necessarily predominate in connection with Plaintiffs' rest and meal break claims because each driver is free to establish and modify his schedule and movement on any given day.  Stated otherwise, Defendant argues that any assessment of whether breaks are provided and drivers are compensated for all hours worked will require a highly individualized inquiry into what activities a particular driver performed on a particular day, when and how each driver made decisions about taking breaks, and whether the decision to take a break had any effect on a driver's compensation.  *See, e.g.,* Def's Opp'n at 8:20-22 ("Indeed, because drivers have the freedom to establish routes, they can build in break times themselves, without

1   repercussion.  This is by and through the drivers themselves setting their ETA,

2   which many drivers can and do use in order to fit in breaks." (internal citations

3   omitted)); *id. at 9:11-13* ("Plaintiff Patton admitted that the reason he did not take

4   lunch breaks was because, with the incentive-based pay system utilized by

5   Defendant, *he chose to* make more money by not taking such lunch breaks."

6   (internal citations omitted) (emphasis in original)).

7           The Court disagrees.  For purposes of class certification of Plaintiffs' rest

8   and meal break claims, the Court's focus is properly on Defendant's

9   compensation system, as it applies to all potential class members.  The question

10   before the Court is whether Defendant's compensation system, including the

11   absence of codes to record breaks in the OBC system and the absence of pay

12   specifically allocated for break periods, is consistent with Defendant's obligation

13   under California law to provide rest and meal breaks to its drivers.  This inquiry

14   encompasses the issues of whether Defendant's compensation scheme does, in

15   fact, provide for code-compliant breaks, pay drivers for rest breaks, and otherwise

16   compensate drivers for all time worked.

17           The California Labor Code provides that:

18           (a) No employer shall *require* any employee to work during

19           any meal or rest period mandated by an applicable order of the

20           Industrial Welfare Commission.

21           (b) If an employer *fails to provide* an employee a meal period

22           or rest period in accordance with an applicable order of the Industrial

23           Welfare Commission, the employer shall pay the employee one

24           additional hour of pay at the employee's regular rate of

25           compensation for each work day that the meal or rest period is not

26           provided.

27

28                                            11

Cal. Labor C. § 226.7 (emphasis added).  Additionally, Wage Order No. 9, which applies to the transportation industry provides as follows regarding meal breaks:

> (A) No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee.

> (B) An employer may not employ an employee for a work period of more than ten (10) hours per day without *providing* the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

> (C) Unless the employee is *relieved of all duty* during a 30 minute meal period, the meal period shall be considered an "on duty" meal period and counted as time worked.  An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to.  The written agreement shall state that the employee may, in writing, revoke the agreement at any time.

> (D) If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the

1    meal period is not provided.

2            (E) In all places of employment where employees are required to eat

3    on the premises, a suitable place for that purpose shall be designated.

4    Cal. Admin. C., Title 8, § 11090(11)(A)-(E) (emphasis added).[8]

5         At present, the question of the correct interpretation and application of

6    what it means to "provide" breaks is a matter of considerable debate in state and

7    federal cases involving the above-referenced code section and related wage

8    orders.[9]  The California Supreme Court recently granted review of two Court of

9    Appeal decisions addressing the issue of what it means for an employer to

10   _____

11        [8]In their Reply, Plaintiffs note that, regarding meal breaks, Wage Order No. 9

12   also requires employers to "keep accurate information with respect to each
     employee[,]" including records of meal periods taken. Pl's Reply at 7:20-25 (citing

13   Cal. Admin. C., Title 8, § 11090(7)(A)(3)). The Wage Order also notes that "[m]eal
     periods during which operations cease and authorized rest periods need not be

14   recorded." *Id.* The Court's determination that certification is warranted does not rest

15   on this line of argument, which Plaintiffs first raise in their Reply.

16        [9]The parties devote less argument to Plaintiffs' *rest* break claims.  However,

17   regarding the state regulation of rest breaks, Defendant notes, without citation to a

18   primary source, that "Section 12 Wage Order No. 9 (applicable to the transportation
     industry) provides only that every employer shall 'authorize and permit' all employees

19   to take ten minute rest periods per every four hours worked or major fraction thereof."

20   Def's Opp'n at 16:1-4; *see* Cal. Admin. C., Title 8, § 11090(12)(A) (also noting that
     "[a]uthorized rest period time shall be counted as hours worked for which there shall

21   be no deduction from wages"). Defendant argues that, like their meal break claims,
     Plaintiffs' rest break claims should not be certified because: (a) "whether Defendant

22   failed to authorize and permit a driver to take a rest break is an [sic] question that can

23   only be resolved with individual fact-finding – namely, asking each driver whether
     they took rest breaks and, if not, why not"; and (b) because the Wage Order only

24   prohibits an employer from *deducting* wages when rest breaks are taken and does not

25   affirmatively require an employer to pay workers for rest breaks. *Id.* at 16:6-9, 16:17-
     24. The Court's analysis, *infra*, regarding certification of Plaintiffs' meal break claims

26   also applies to Plaintiffs' rest break claims.

27

28                                              13

1    "provide" meal breaks as opposed to "ensure" that they are taken:  *Brinkley v.*

2    *Public Storage, Inc.*,198 P.3d 1087, 87 Cal.Rptr.3d 674 (Jan. 14, 2009), and

3    *Brinker Restaurant Corp. v. Superior Court*,196 P.3d 216, 85 Cal.Rptr.3d 688

4    (Oct. 22, 2008).  Additionally, the California Court of Appeals Decision in

5    *Cicairos v. Summit Logistics*, Inc., 133 Cal.App.4th 949 (2005), is at the center of

6    that debate, particularly for cases involving truck driver plaintiffs, and it is at the

7    heart of the parties' disagreement over whether class certification is appropriate in

8    connection with Plaintiffs' break claims in this case.

9         As an initial matter, the Court notes that *Cicairos* does not address class

10   certification requirements.  *Cicairos* decided a motion for summary judgment, the

11   resolution of which was concerned with an employer's obligation to provide its

12   drivers with an adequate meal period.  On the facts before it in *Cicairos*, the

13   California Court of Appeal determined that the employer's obligation "is not

14   satisfied by assuming that the meal periods were taken, because employers have

15   'an affirmative obligation to ensure that workers are actually relieved of all duty.'

16   (Dept. of Industrial Relations, DLSE, Opinion Letter No. 2002.01.28 (Jan. 28,

17   2002) p. 1.)  They also have a duty, under wage order No. 9, to record their

18   employees' meal periods.  The defendant does not claim to have complied with

19   this provision."  *Id.* at 962-963 (also noting a factual dispute existed because,

20   although the employer's "payroll manger claimed meal period and rest breaks

21   were the sole responsibility of the drivers because the company could not regulate

22   the drivers' activities on the road[,]" the case also involved a collective

23   bargaining agreement which provided that "[l]unch and rest periods will be

24   scheduled by the Company").  Accordingly, *Cicairos* compels no particular

25   conclusion at the class certification stage of the instant litigation.

26        Beyond that, arguing individual issues predominate in connection with

27

28                                         14

Plaintiffs' break claims in this case, precluding certification pursuant to Rule 23(b)(3), Defendant relies heavily on the persuasive precedent set forth in District Judge Fischer's recent opinion in *Brown v. Federal Express*, 249 F.R.D. 580 (C.D. Cal. 2008). The Court agrees that the decision in *Brown* is instructive on the issue of predominance. However, the analysis in *Brown* does not counsel for or compel the same outcome in this case.[10] Although *Brown* also involved

_____

[10]*Brown* provides the following analysis of the parties' competing views of an employer's obligation to "provide" breaks:

None of these [Labor Code] provisions supports Plaintiffs' position that Defendant was required to ensure that Plaintiffs took meal breaks. Section 226.7(a) states that "[n]o employer shall require any employee to work during any meal or rest period." (Emphasis added.) This is clearly inconsistent with Plaintiffs' position. Section 226.7(b) imposes liability "[i]f an employer fails to provide an employee a meal period in accordance with an applicable order of the Industrial Welfare Commission." (Emphasis added.) Section 512(a) likewise states that "[a]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes." (Emphasis added.) The word "provide" means "to supply or make available." Merriam Webster's Collegiate Dictionary 937 (10th ed.2002). It does not suggest any obligation to ensure that employees take advantage of what is made available to them.

The language of the Industrial Welfare Commission Wage Order applicable to Defendant comes closest to imposing a duty to enforce meal breaks, stating that "[n]o employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes." 8 C.C.R. § 11090(11). However, this language is also consistent with an obligation to provide a meal break, rather than to ensure that employees cease working during that time. The California Supreme Court has described the interest protected by meal break provisions, stating that "[a]n employee forced to forgo his or her meal period ... has been deprived of the right to be free of the employer's control during the meal period." *Murphy v. Kenneth Cole Prods., Inc.*,

break claims by delivery drivers, the potential class members were employed in

different job classifications with disparate job duties, and the focus in *Brown* was

on scheduling and staffing constraints alleged to have effectively deprived drivers

of the opportunity to take code-compliant meal breaks.  *See, e.g., id.* at 582-83

(citing Plaintiffs's contentions that Defendant "was committed to making a large

number of deliveries on time and devoted insufficient resources to this task.  As a

result, [drivers] were put under excessive pressure to make deliveries as quickly

as possible, such that they were unable to take meal breaks and rest breaks within

the time required by law." (internal citations to record omitted)); *id.* at 586

(explaining that the plaintiffs' job duties "var[ied] significantly by job

classification" and that "[a]lthough FedEx may have consistent policies that apply

across job classifications, their impact on employees' ability to take breaks

necessarily depends on each individual's job duties.  Analysis of whether drivers'

---

40 Cal.4th 1094, 1104, 56 Cal.Rptr.3d 880, 155 P.3d 284 (2007).  It is
an employer's obligation to ensure that its employees are free from its
control for thirty minutes, not to ensure that the employees do any
particular thing during that time.  Indeed, in characterizing violations of
California meal period obligations in *Murphy*, the California Supreme
Court repeatedly described it as an obligation not to force employees to
work through breaks. [Footnote omitted] *See id.* at 1102, 56 Cal.Rptr.3d
880, 155 P.3d 284 ("The trial court concluded that KCP did not provide
Murphy the required meal or rest periods and accordingly awarded
Murphy an 'additional hour of pay' for each day Murphy was forced to
work through a meal or rest period."), 1104 ("Section 226.7, subdivision
(b) requires that employees be paid 'one additional hour of pay' for each
work day that they are required to work through a meal or rest period....
An employee forced to forgo his or her meal period ... loses a benefit to
which the law entitles him or her.").
*Brown*, 249 F.R.D. at 585-86.

1   job duties precluded taking meal and rest breaks would vary widely among

2   Couriers"). *Brown* is distinguishable from the facts of this case, in which

3   Plaintiffs challenge whether Defendant's compensation system, which applies in

4   the same manner to all potential class members on all work days, satisfies the

5   requirement that an employer "provide" meal breaks.  Whatever the legal

6   meaning of the term "provide" in this context, the question is one common to all

7   potential class members.

8        Additionally, as Judge Henderson of the Northern District of California

9   recently explained in response to a defendant employer's argument that "the

10  presence of a corporate policy is insufficient" to establish commonality or

11  predominance in connection with a motion for class certification by Federal

12  Express drivers:

13          FedEx asserts that because each courier's job is different, due

14          to variations in route, supervisor, and preferences regarding the

15          timing of breaks, common questions of fact do not exist.  FedEx

16          seems to be arguing too much with these assertions; it is

17          simultaneously claiming that its policies are consistent with state law

18          but that the policies do not apply evenly to all drivers.  This claim is

19          specious.  All employees worked as couriers under standardized

20          employment policies that were the basis of their wage calculations.

21          Plaintiffs have identified the relevant policies and the law with which

22          they argue the policies are inconsistent, and as such offer a common

23          question of law and fact that predominates over individual inquiries.

24  *Bibo v. Federal Exp., Inc.*, Case No. C 07-2505 THE, 2009 WL 1068880 at *10,

25  (N.D.Cal. Apr. 21, 2009); *see also id.* at *3 ("Accordingly, [because the state of

26  the law is unsettled on the issue,] the Court cannot interpret the statute in this

27

28                                          17

regard, except to note that it is unnecessary to rule on the meaning of 'provide' to resolve the current motion.").

Here, for purposes of class certification, the Court finds that common issues predominate regarding, *inter alia*, whether Defendant complied with state law obligations to provide and record code-compliant breaks to class members.

### 2. *Rule 23(b)(3) "Superiority"*

To certify the Plaintiffs' proposed class, the second component of Rule 23(b)(3) requires the Court to find "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In determining the class method is superior, courts consider:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

(D) the difficulties likely to be encountered in the management of a class action.

*Id.* Here, Defendant argues that certification is not appropriate because of the need for individualized damages determinations. Def's Opp'n at 24:16-25:11 (framing issue as one of predominance but arguing against certification because of the individualized damages determinations required by the facts of this case: "Furthermore, Plaintiffs have completely failed to address how drivers are to be compensated in the unlikely event that they can establish that wages are owed for certain activities or missed meal or rest breaks.").

"The amount of damages is invariably an individual question and does not

1   defeat class action treatment." *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir.

2   1975).  However, the Court should consider whether and how such individual

3   determinations would need to be made in evaluating "the difficulties likely to be

4   encountered in the management of a class action." Fed. R. Civ. P.  23(b)(3)(D).

5   With respect to Plaintiffs' rest and meal break claims, the Court finds that the

6   determination of damages on a class-wide basis is not likely to present a

7   particularly complex or burdensome task.  Pls' Reply (arguing that, if Plaintiffs'

8   prevail, the rest break and meal period premiums they seek "will be owed for

9   each and every day worked by each driver").  Accordingly, the Court finds that a

10  class action is superior to other available methods for the fair and efficient

11  adjudication of Plaintiffs' rest and meal break claims,[11] and Rule 23(b)(3) is

12  satisfied because questions of law and fact common to all potential class members

13  predominate over any questions affecting only individual members in connection

14  with Plaintiffs' rest and meal break claims.

15        ### 3.  Stay of Rest and Meal Break Claims

16        Despite the Court's determination that Plaintiffs have demonstrated that

17

18        [11]Courts regularly find that a class action is the superior method of adjudication
19   where, as here, "few potential class members could afford to undertake individual
20   litigation against [Defendant] to recover the relatively modest damages at issue.
     Therefore, in the absence of a class action, few class members would have any
21   meaningful redress against [Defendant] as a practical matter." *Chamberlan v. Ford
22   Motor Co.*, 223 F.R.D. 524, 527 (N.D. Cal. 2004); *see also Phillips Petroleum Co. v.
     Shutts* , 472 U.S. 797, 809 (1985) ("Class actions . . . may permit the plaintiffs to pool
23   claims which would be uneconomical to litigate individually."); *Local Joint Exec. Bd.
24   of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th
     Cir. 2001) (concluding that "the superiority requirement of Rule 23(b)(3) is easily
25   satisfied" in a case involving "multiple claims for relatively small individual sums,"
26   where some or most class members "will be unable to proceed as individuals because
     of the disparity between their litigation costs and what they hope to recover.").

27

28                                      19

1   their rest and meal break claims are amenable to class treatment, the Court hereby

2   stays this action with respect to those claims.

3        "A trial court may, with propriety, find it is efficient for its own docket and

4   the fairest course for the parties to enter a stay of an action before it, pending

5   resolution of independent proceedings which bear upon the case." *Leyva v.*

6   *Certified Grocers of California, Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979); *see also*

7   *Landis v. North American Co.,* 299 U.S. 248, 254, 81 L. Ed. 153, 57 S. Ct. 163

8   (1936) ("[T]he power to stay proceedings is incidental to the power inherent in

9   every court to control the disposition of the causes on its docket with economy of

10  time and effort for itself, for counsel, and for litigants.").  Among the "competing

11  interests" that a court may weigh in deciding whether to grant a stay are:  (1) the

12  possible damage which may result from the granting of a stay; (2) the hardship or

13  inequity which a party may suffer in being required to go forward; and (3) the

14  orderly course of justice measured in terms of the simplifying or complicating of

15  issues, proof, and questions of law which could be expected to result from a stay.

16  *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at

17  254-255.).

18       Here, in light of the foregoing discussion of the cases currently pending

19  before the California Supreme Court and the likelihood that the state court

20  resolution of the legal issue (the meaning of "provide" in the California Labor

21  Code) will have a significant impact on the course of this litigation, a stay will

22  serve the interests of the parties and "the orderly course of justice measured in

23  terms of the simplifying . . . of issues, proof, and questions of law which could be

24  expected to result from a stay." *Id.*  Accordingly, the Court hereby STAYS all

25  further proceedings regarding Plaintiffs' rest and meal break claims until the

26  Supreme Court decides the issue(s) before it in *Brinkley* and *Brinker Restaurant*.

27

28                                    20

**B. Wage Claims**

### *1. Challenge on the Merits*

It appears that Defendant intends to challenge Plaintiffs' claim that class members were not paid minimum wages or agreed rates for all hours worked as failing to articulate an actionable claim.[12]  *See, e.g.,* Def's Opp'n at 17:10-17 ("The question is not based on the merits of Plaintiffs' claims, but whether a class can be certified where no abstract legal wrong even exists regardless of the particular facts related to the Plaintiffs themselves."); *id.* at 21:14-16 ("As piece rate is a legal form of payment for wages in California, Plaintiffs cannot contend that activities related and necessary to perform the 'piece' of work are not included in the rate.").[13]  Defendant's position is that its compensation system is a "piece rate" system which compensates its drivers "for all of their activities" because "Defendant incorporates time spent on tasks incident to the actual driving into the mileage rate paid to its drivers." *Id.* at 20:6-7, 19-20.

Despite Defendant's effort to characterize this line of argument as somehow related to whether class certification is warranted in this case, the Court finds the argument an attempt to argue the merits of this case.  The Court declines to rule on the merits of Plaintiffs' wage claims at this juncture.  *See Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1177 (2007) (agreeing with the district court's conclusion that the defendant's purported challenges to the plaintiffs' evidence of

---

[12]For purposes of this Motion, the Court refers to Plaintiffs' minimum wage or "agreed-upon" wage claims as the "wage claims."

[13]Defendant characterizes the claim as follows:  "Plaintiffs' minimum wage claim contends that they were not paid wages for various activities including pre[-] and post-trip inspections, paperwork, waiting for dispatch instructions, washing and fueling the tractor."  Def's Opp'n at 17:18-20.

commonality "related *not* to the Rule 23(a) requirement of commonality but to the
ultimate merits of the case and 'thus should be properly addressed by a jury
considering the merits' rather than a judge considering class certification"
(internal citation omitted) (emphasis in original)).

### 2.  *Rule 23(b)(3) Predominance and Superiority*

The only challenge Defendant arguably makes to Plaintiffs' "minimum
wage" claim pursuant to Rule 23(b) is that the determination of damages would
not be conducive to class treatment:

> Once the compensation plan is properly accepted as lawful,
> the only way to determine whether a driver received minimum wage
> in a particular week is to analyze the activities of that driver and
> evaluate whether the piece rate properly covered all such activities
> and paid the driver at least minimum wage.  This determination
> would require an analysis of each and every driver for each and
> every day worked – a highly individualized inquiry which would
> predominate.

Def's Opp'n at 21:21-26.  Defendant makes the same or a very similar argument
regarding Plaintiffs' claim that they were not paid at an agreed-upon rate,
maintaining that the Court would need to conduct an individualized inquiry into
what each driver believed the "agreed upon" compensation rate to be and what
amount of time, if any, each driver spent on allegedly unpaid activities.  *Id.* at
22:9-25 ("The only way in which this question can be answered is by posing the
relevant question to each class member."); *id.* at 24:24-25:2 ("Thus, even if
Plaintiffs could establish liability on the wage claims, determining whether a
driver engaged in a particular unpaid activity and how long that activity took will
result in a predominance of individualized inquiries.")

22

1   However inartfully presented, Defendant's argument identifies potential

2   challenges to certification of Plaintiffs' wage claims on the ground that the need

3   for individualized damages determinations would run afoul of Rule 23(b)(3)'s

4   predominance and superiority standards.  As noted above, "[t]he amount of

5   damages is invariably an individual question and does not defeat class action

6   treatment." *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir.1975).  However, the

7   Court should consider whether and how such individual determinations would

8   need to be made in evaluating "the difficulties likely to be encountered in the

9   management of a class action." Fed. R. Civ. P.  23(b)(3)(D).

10   With respect to Plaintiffs' wage claims, the Court finds that, if liability is

11   established, the determination of damages on a class-wide basis could be achieved

12   by reference to the measures identified by Plaintiffs and not refuted as reliable by

13   Defendant.  See Pls' Mot. at 23:12-24:26 (suggesting how "[t]his [unpaid] time

14   may be derived in part from employee log records, their 'activity time sheets,'

15   and may in part require sampling or deposition testimony of the drivers and/or

16   defendant's witnesses").  The predominant question is whether Defendant's

17   compensation system achieved its articulated goal: compensation for *all* activities

18   incident to a delivery.  The subsequent calculation of compensation required for

19   allegedly "unpaid" time will thereafter be largely a mechanical task and will not

20   require a large number of separate "mini-trials."  In particular, under Plaintiffs'

21   theory of the case, it is not necessary to make an individualized determination of

22   how much time each driver spent on each allegedly unpaid activity each day.  The

23   collection of necessary information and required calculations do not present an

24   insurmountable obstacle or one that would otherwise make class certification

25   inappropriate under the circumstances.  Accordingly, after careful consideration

26   of the non-exhaustive list of factors outlined in Rule 23(b)(3) as well as the

27

28

23

1    documentation submitted by the parties, the Court finds that a class action is

2    superior to other available methods for the fair and efficient adjudication of this

3    controversy.

4         Accepting as true the allegations in Plaintiffs' Complaint, each member of

5    the putative class is entitled to compensation for portions of days or hours for

6    which no pay (*i.e.*, mileage pay, activity based pay, or hourly pay) was allocated

7    under Defendant's compensation system, and that pay would likely never be

8    recovered but for class treatment.  Accordingly, the Court finds that the class

9    method is superior, and that the conditions of Rule 23(b)(3) have been satisfied in

10   connection with Plaintiffs' wage claims.

11   **C.  Labor Code Section 226 "Pay Stub" Violation Claim**

12        Section 226 of the California Labor Code provides in pertinent part that:

13            (a) Every employer shall, semimonthly or at the time of each

14        payment of wages, furnish each of his or her employees, either as a

15        detachable part of the check, draft, or voucher paying the employee's

16        wages, or separately when wages are paid by personal check or cash,

17        an accurate itemized statement in writing showing (1) gross wages

18        earned, (2) total hours worked by the employee, except for any

19        employee whose compensation is solely based on a salary and who is

20        exempt from payment of overtime under subdivision (a) of Section

21        515 or any applicable order of the Industrial Welfare Commission,

22        (3) the number of piece-rate units earned and any applicable piece

23        rate if the employee is paid on a piece-rate basis, (4) all deductions,

24        provided that all deductions made on written orders of the employee

25        may be aggregated and shown as one item, (5) net wages earned, (6)

26        the inclusive dates of the period for which the employee is paid, (7)

27

28                                      24

1   the name of the employee and his or her social security number,

2   except that by January 1, 2008, only the last four digits of his or her

3   social security number or an employee identification number other

4   than a social security number may be shown on the itemized

5   statement, (8) the name and address of the legal entity that is the

6   employer, and (9) all applicable hourly rates in effect during the pay

7   period and the corresponding number of hours worked at each hourly

8   rate by the employee. . . .

9   * * * * *

10   (e) An employee *suffering injury* as a result of a knowing and

11   intentional failure by an employer to comply with subdivision (a) is

12   entitled to recover the greater of all actual damages or fifty dollars

13   ($50) for the initial pay period in which a violation occurs and one

14   hundred dollars ($100) per employee for each violation in a

15   subsequent pay period, not exceeding an aggregate penalty of four

16   thousand dollars ($4,000), and is entitled to an award of costs and

17   reasonable attorney's fees.

18   Cal. Labor C. § 226(a) & (e) (emphasis added).

19   Here, Plaintiffs allege that the pay stubs and "settlement summaries" that

20   Defendant provided to potential class members were defective in several respects,

21   including that they failed to set forth the mileage pay and pay for specific

22   activities, failed to include the number of hours worked and the hourly rate for

23   activities paid on an hourly basis, and failed to identify what is included in the

24   "miscellaneous" pay category listed on the pay stubs. Pls' Mot. at 15:8-16:8.

25   Defendant does not challenge the substance of Plaintiffs' allegations

26   regarding the contents of the pay stubs and settlement summaries or that those

27

28   25

documents are standardized documents provided by Defendant to all potential

class members.  Rather, Defendant purports to challenge Plaintiffs' "pay stub

claim" on the ground that individual issues predominate.  The premise of

Defendant's argument is that, in order to prevail on a claim for violation of

California Labor Code Section 226, a plaintiff must demonstrate that he suffered

an *actual* injury.  Defendant maintains that the testimony of Michael Patton, one

of the Lead Plaintiffs in this case, demonstrates that Patton did not suffer any

injury as a result of the alleged pay stub violations.  Def's Opp'n at 23:22-24:5

(quoting Patton testifying as follows regarding his perception of whether he was

"damaged in some respect by the fact that [his] pay may not have had certain

information that it was required to have": "I don't know if that was so much

damaging.  I mean, given – having those slips or the trip sheets, I usually, on the

average, knew what I was making per day, on the average.  I could usually do the

math in my head and figure out approximately what I was going to get gross.  So

if the information was not on the check stub, it wouldn't have affected me one

way or another.").

   Defendant is correct that liability will lie for violations of Labor Code

Section 226 only where "some specific injury caused by the inaccuracy" can be

identified.  *See Elliot v. Spherion Pacific Work, LLC*, 572 F.Supp.2d 1169, 1181

(C.D.Cal. 2008).  However, the types of injuries on which a Section 226 claim

may be premised include "the possibility of not being paid overtime, employee

confusion over whether they received all wages owed them, difficulty and

expense involved in reconstructing pay records, and forcing employees to make

mathematical computations to analyze whether the wages paid in fact

compensated them for all hours worked."  *Id.*

   Here, neither the allegations in Plaintiffs' Complaint nor the referenced

26

1  portion of Lead Plaintiff Patton's deposition testimony compels a determination

2  that Plaintiffs have not alleged or cannot demonstrate injury sufficient to support

3  a claim for violation of Labor Code Section 226.  In fact, Patton's statement that

4  he "could usually do the math in [his] head and figure out approximately what

5  [he] was going to get gross" is consistent with the type of injury that has been

6  found sufficient to support a claim for violation of Section 226.  Accordingly,

7  particularly in light of the fact that the pay stubs and settlement summaries

8  provided to California drivers are standardized documents, the Court finds that

9  Plaintiffs have demonstrated that certification of their pay stub claim is

10  appropriate.

11  **D.  Labor Code Section 203 and Business and Professions Code Section**

12  **17200 Claims**

13       Defendant's only challenge to Plaintiffs' claims pursuant to California

14  Labor Code Section 203 and California Business and Professions Code Section

15  17200 is that these claims are wholly derivative of Plaintiffs other claims and

16  should not be certified if the other claims are not certified.  Because the Court

17  finds that Plaintiffs have demonstrated that certification of their other claims is

18  appropriate, this challenge to these "derivative" claims fails and Plaintiffs'

19  request that their claims pursuant to California Labor Code Section 203 and

20  California Business and Professions Code Section 17200 be certified is granted.

21  **V.  CONCLUSION**

22       Therefore, Plaintiffs' Motion for Class Certification (docket no. 59) is

23  GRANTED.  The Court certifies the following class:  All of Defendant's

24  California-based, local and regional intermodal and local and regional DCS

25  drivers who worked for Defendant in the four years prior to the filing of the

26  original complaint in this action and/or through to the time of trial in this case.

27

28

27

The definition excludes over-the-road drivers.  Additionally, the Court hereby STAYS all further proceedings regarding Plaintiffs' rest and meal break claims until the Supreme Court decides the issue(s) before it in *Brinkley* and *Brinker Restaurant*.  The parties are ordered to file a joint statement to the Court regarding how the remainder of this case should proceed, if at all, while proceedings are stayed in connection with Plaintiffs' rest and meal break claims, *e.g.*, whether discovery can be efficiently bifurcated to proceed with respect to other aspects of Plaintiffs' case.  The parties' joint statement shall not exceed 15 pages and shall be filed with the Court within thirty (30) days of the date of this Order.

**IT IS SO ORDERED.**

Dated: May 15, 2009.

FLORENCE-MARIE COOPER, JUDGE
UNITED STATES DISTRICT COURT