LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 07-08336 BRO (SHx) | Date | June 3, 2014 |
|---|---|---|---|
| Title | GERARDO ORTEGA, ET AL. V. J.B. HUNT TRANSPORT INC. | | |

Present: The Honorable **BEVERLY REID O'CONNELL, United States District Judge**

| Renee A. Fisher | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS)

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [125]

### I. INTRODUCTION

Plaintiffs Gerardo Ortega and Michael D. Patton[1] are regional and long-distance truck drivers employed by Defendant J.B. Hunt Transport Inc. Plaintiffs contend that Defendant has failed to pay them at least a minimum hourly wage for certain required job-related activities. Accordingly, they allege that Defendant is liable to them under California labor law.

Currently pending before the Court is Defendant J.B. Hunt Transport Inc.'s motion for summary judgment on all of Plaintiffs' remaining claims. (Dkt. No. 125.) According to Defendant, Plaintiffs' claims relate to the services it offers and the prices for those services, and consequently are preempted under the Federal Aviation Administration Authorization Act. For the following reasons, Defendant's motion is GRANTED.

### II. BACKGROUND

#### A. Factual Background

Defendant J.B. Hunt Transport Inc. is one of the largest transportation logistics companies in North America. (First Am. Compl. ("FAC") ¶ 11.) It provides at least two types of services for its customers: (1) Intermodal Services; and (2) Dedicated Contract

---

[1] Ortega and Patton are class representatives for all others similarly situated.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 07-08336 BRO (SHx) | Date | June 3, 2014 |
|---|---|---|---|
| Title | GERARDO ORTEGA, ET AL. V. J.B. HUNT TRANSPORT INC. | | |

Services ("DCS").[2] (Def.'s Statement of Uncontroverted Facts ("SUF") ¶ 4; Dkt. No. 125-2.) Through its Intermodal Services, Defendant's drivers deliver freight primarily to and from railways; through its Dedicated Contract Services, Defendant's drivers deliver freight on behalf of a particular customer on a regular basis. (*Id.*) Plaintiffs Gerardo Ortega and Michael Patton were formerly employed by Defendant as Intermodal Services drivers, based out of its location in South Gate, California. (FAC ¶ 9.) Ortega also worked for Defendant as a Dedicated Contract Services driver. (FAC ¶ 9.)

Sometime during the 1990s, Defendant began to institute an Activity-Based-Pay ("ABP") compensation system. (SUF ¶ 24.) Instead of paying an hourly wage or a straight salary, Defendant's ABP system compensates drivers by allotting a rate per mile driven, in addition to other payments for specific non-driving activities, such as delivering a load of freight (a "drop"). (SUF ¶ 25.) Drivers may receive hourly pay, however, while they wait during excessive customer delays. (*Id.*) Accordingly, there are certain activities for which Defendant's drivers are not directly compensated—by hourly pay or otherwise—such as loading and unloading freight, completing paperwork, performing inspections, or waiting for a customer.

Believing they were not compensated as required by California wage laws, Plaintiffs filed this action against Defendant. In their complaint, Plaintiffs allege that Defendant routinely fails to pay its local and regional drivers the minimum wages set by California law for all hours worked, (FAC ¶¶ 2, 26–34), as well as the wage it agreed to pay, (FAC ¶¶ 35–41). In essence, Plaintiffs contend that Defendant's ABP system fails to provide at least minimum wage during portions of a driver's day, specifically, while performing certain tasks: (a) waiting in lines at intermodal terminals for periods of less than two hours; (b) performing pre- and post-trip inspections; (c) fueling vehicles; (d) waiting for dispatch to issue assignments; and (e) hooking and unhooking trailers. (*See, e.g.*, FAC ¶ 29.) They also claim that Defendant failed to furnish Plaintiffs with accurate itemized wage statements in writing. (FAC ¶¶ 49–55.)

---

[2] In their complaint, Plaintiffs refer to DCS as "Direct Contract Services," while Defendant refers to it as "Dedicated Contract Services." (*Compare* FAC ¶ 9 *with* Mot. 3.) The Court will adopt Defendant's terminology.

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 07-08336 BRO (SHx) | Date | June 3, 2014 |
|---|---|---|---|
| Title | GERARDO ORTEGA, ET AL. V. J.B. HUNT TRANSPORT INC. | | |

### B. Procedural Background

Plaintiffs filed their original complaint on December 27, 2007, (Dkt. No. 1), and a first amended complaint on November 17, 2008, (Dkt. No. 41). This Court stayed the case from June 19, 2009, until August 27, 2012, while a relevant case with potential ramifications on this action was appealed to the California Supreme Court. (Dkt. Nos. 66, 76.) On May 24, 2013, Defendant filed a motion for judgment on the pleadings with respect to Plaintiffs' meal and rest break claims, which the Court granted on October 2, 2013. (Dkt. No. 124.) In its order, the Court held that the Federal Aviation Administration Authorization Act ("FAAAA") preempts California's meal and rest break laws as applied to Defendant. (Dkt. No. 124, at 7–9.) It reasoned that those laws have a significant impact on Defendant's routes, services, and prices. (*Id.*) Accordingly, the Court granted judgment on the pleadings to Defendant as to Plaintiffs' third claim.

On October 18, 2013, Defendant filed the instant motion for summary judgment. (Dkt. No. 125.) In its motion, Defendant argues that California minimum wage laws, and the courts' interpretation of those laws, forbid an employer from using an ABP compensation system. (Mot. 1.) Accordingly, Defendant contends that those laws impact the "prices, routes, and services" of a motor carrier," and are therefore preempted by the FAAAA. (*Id.*)

### III. LEGAL STANDARD

Summary judgment is appropriate when, after adequate discovery, the evidence demonstrates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A disputed fact is material where its resolution might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party. *Id.* A court may consider the pleadings, discovery and disclosure materials, and any affidavits on file. Fed. R. Civ. P. 56(c)(2). Where the moving party's version of events differs from the non-moving party's version, a court must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

Case 2:07-cv-08336-BRO-SH Document 168 Filed 06/04/14 Page 4 of 11 Page ID #:4663

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 07-08336 BRO (SHx) | Date | June 3, 2014 |
|---|---|---|---|
| Title | GERARDO ORTEGA, ET AL. V. J.B. HUNT TRANSPORT INC. | | |

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The moving party may satisfy that burden by showing "that there is an absence of evidence to support the non-moving party's case." *Id.* at 325.

Once the moving party has met its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the non-moving party must go beyond the pleadings and identify specific facts that show a genuine issue for trial. *Id.* at 587. Only genuine disputes over facts that might affect the outcome of the suit will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248; *see also Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (finding that the non-moving party must present specific evidence from which a reasonable jury could return a verdict in its favor). A genuine issue of material fact must be more than a scintilla of evidence, or evidence that is merely colorable or not significantly probative. *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000).

Although a court may rely on materials in the record that neither party cited, it need only consider cited materials. Fed. R. Civ. P. 56(c)(3). Therefore, a court may properly rely on the non-moving party to specifically identify the evidence that precludes summary judgment. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

Finally, the evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise a genuine issue of fact and defeat summary judgment. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson*, 477 U.S. at 253.

## IV. DISCUSSION

Case 2:07-cv-08336-BRO-SH Document 168 Filed 06/04/14 Page 5 of 11 Page ID #:4664

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 07-08336 BRO (SHx) | Date | June 3, 2014 |
|---|---|---|---|
| Title | GERARDO ORTEGA, ET AL. V. J.B. HUNT TRANSPORT INC. | | |

In their complaint, Plaintiffs allege that Defendant is violating California Labor Code sections 221–223, 1194, and 1197. (FAC ¶¶ 26–41.) In essence, these laws require an employer to pay its employees at least the designated minimum wage, and may not withhold wages, or secretly pay less than what it has agreed to pay. *See* Cal. Labor Code §§ 221–23, 1194, 1197. According to Plaintiffs, Defendant violates these provisions by "refusing to pay hourly rates of at least the state-mandated minimum wage for time spent" doing various required, job-related activities. (FAC ¶ 29.) Although Defendant contends its "piece rate compensation system fully compensates drivers for [all] activities as part of a rate measured by the length of the routes driven," (Mot. 17; Field Decl. ¶ 8), this method of compensation has been held to be inadequate in *Armenta v. Osmose Inc.*, 135 Cal. App. 4th 314 (2005).

In *Armenta*, the California Court of Appeal held that "[t]he minimum wage standard applies to each hour worked by [an employee]." *Armenta*, 135 Cal. App. 4th at 324. In other words, "all hours must be paid at the statutory or agreed rate and no part of this rate may be used as a credit against a minimum wage obligation." *Id.* at 323. Or to put it yet another way, even if average hourly compensation meets the minimum wage rate, an employer violates California labor law if it does not actually provide at least minimum wage for each hour worked. *See id.*

As discussed above, Defendant does not pay its drivers an hourly wage. (*See* Ashmore Decl. ¶¶ 12–13.) Instead, it pays them a certain amount for every mile they drive, in addition to lump sums for every delivery they make. (*Id.*) As a result, Defendant's drivers are not directly compensated for certain job-related activities, including loading and unloading freight, or waiting for a customer.[3] Thus, Defendant's ABP system does not comply with California's minimum wage law, as interpreted in *Armenta*.[4]

---

[3] However, if the driver must wait for a customer longer than one and a half hours, it receives hourly compensation.

[4] In its motion, Defendant briefly argues the rule in *Armenta* is an erroneous interpretation of California law, and that its "ABP [system] is a lawful piece rate compensation system that fully compensates drivers for [all] activities as part of a rate measured by the length of the routes driven." (*See* Mot. 16, 17 n.5.) Nevertheless, Defendant neither cites any case law to support its contention, nor provides any

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 07-08336 BRO (SHx) | Date | June 3, 2014 |
|---|---|---|---|
| Title | GERARDO ORTEGA, ET AL. V. J.B. HUNT TRANSPORT INC. | | |

Apparently conceding for purposes of this motion that *Armenta* is viable, Defendant contends that Plaintiffs' claims constitute "exactly the kind of state regulatory interference in the market that Congress intended to preempt" when it enacted the FAAAA. (Mot. 19–20.) In "identify[ing] the domain expressly pre-empted" by a federal statute, a court must "focus first on the statutory language, which necessarily contains the best evidence of Congress' pre-emptive intent." *Dan's City Used Cars Inc. v. Pelkey*, 133 S. Ct. 1769, 1778 (2013). In enacting the FAAAA, Congress intended to preempt certain state laws: "[A] State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law *related to a price, route, or service* of any motor carrier . . . *with respect to the transportation of property*."[5] 49 U.S.C. § 14501(c)(1) (emphasis added).[6] "[T]he key phrase, obviously, is 'relating to.'" *Morales*, 504 U.S. at 383. And "[t]he ordinary meaning of ['relating to'] is a broad one . . . and the words thus express a broad pre-emptive purpose." *Id.* Therefore, for preemption, state laws need only "*a connection with, or reference to*" a motor carrier's "price, route, or service . . . with respect to the transportation of property." *See Rowe*, 552 U.S. at 370. The Supreme Court has also emphasized that "preemption may occur

---

explanation as to why *Armenta* is erroneous. (*See* Mot. 17 n.5.) Instead, Defendant merely asserts that the California Supreme Court has not reviewed *Armenta*, and *Armenta*'s rule "violates federal preemption." (*Id.*) As to its first point, the Court is unaware of any legal doctrine that would require a state supreme court to review a lower court's statutory interpretation in order for it to be valid. As to its second point, it is not clear what Defendant seeks to argue. Defendant's arguments attempting to discount *Armenta* are therefore unpersuasive.

[5] The Supreme Court has interpreted this language in several different opinions. *See, e.g.*, *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364 (2008); *Dan's City Used Cars Inc. v. Pelkey*, 133 S. Ct. 1769 (May 13, 2013); *Am. Trucking Ass'ns Inc. v. City of Los Angeles*, 133 S. Ct. 2096 (June 13, 2013); *cf. Morales v. Trans World Airlines Inc.*, 504 U.S. 374 (1992) (interpreting the precursor to § 14501(c)(1), whose application is identical).

[6] In its entirety, the preemption section provides, "Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier (other than a carrier affiliated with a direct air carrier covered by section 41713(b)(4)) or any motor private carrier, broker, or freight forwarder with respect to the transportation of property." 49 U.S.C. § 14501(c)(1).

Case 2:07-cv-08336-BRO-SH Document 168 Filed 06/04/14 Page 7 of 11 Page ID #:4666

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 07-08336 BRO (SHx)** | Date | June 3, 2014 |
|---|---|---|---|
| Title | GERARDO ORTEGA, ET AL. V. J.B. HUNT TRANSPORT INC. | | |

even if a state law's effect on [prices], routes or services is only indirect," and "it makes no difference whether a state law is consistent or inconsistent with federal regulation." *Id.* (internal quotation marks omitted). Finally, "pre-emption occurs at least where state laws have a '*significant impact*' related to Congress' *deregulatory* and *pre-emption-related* objectives," which the Court has described as "helping assure transportation rates, routes, and services that reflect 'maximum reliance on competitive market forces,' thereby stimulating 'efficiency, innovation, and low prices.'" *Id.* (emphasis added).

Nevertheless, the Supreme Court has recently cautioned that although the words "related to" express a "broad pre-emptive purpose," that does not mean "the sky is the limit." *Dan's City*, 133 S. Ct. at 1778. To be preempted, the effect on rates, routes, or services must be more than "tenuous, remote, or peripheral," but the Court has not specified "where, or how, 'it would be appropriate to draw the line.'" *Rowe*, 552 U.S. at 371; *see also Dan's City*, 133 S. Ct. at 1778. In borderline cases, the Ninth Circuit has directed that "the proper inquiry is whether the provision, directly or indirectly, 'binds the . . . carrier to a particular price, route or service and thereby interferes with competitive market forces within the . . . industry." *Am. Trucking Ass'ns v. City of L.A.*, 660 F.3d 384, 397 (9th Cir. 2011) *overruled on other grounds* by *Am. Trucking Ass'ns, Inc. v. City of L.A.*, 133 S. Ct. 2096 (2013).

Here, California's minimum wage laws, upon which Plaintiffs' claims are based, are indeed "related to" Defendant's services themselves, as well as the price of those services. As a matter of logic and basic economic principles, if Defendant were forced to change its current ABP compensation system to include hourly pay for "non-productive" activity, its labor costs would clearly be affected, and consequently so would the prices of the services it provides. Defendant provides ample evidence to support this conclusion.

In his declaration, Darren Field indicates that driver compensation is a significant portion of costs associated with its Intermodal Services, "second only to rail costs."[7]

---

[7] Although Plaintiffs attempt to refute this in their opposition, (Opp'n 19–22), Field's declaration is uncontested. Plaintiffs point to Field's deposition testimony as evidence that after rail costs come drayage costs, not driver compensation. (*Id.*) Yet Field never testified to that in his deposition. (*See* Humphrey Decl. Ex. I, at 99–100.) Instead, he indicated that driver compensation is a component of drayage costs, which comprises 35% of total costs. (*Id.* at 96.) Therefore, it is not inconsistent to say

Case 2:07-cv-08336-BRO-SH Document 168 Filed 06/04/14 Page 8 of 11 Page ID #:4667

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 07-08336 BRO (SHx) | Date | June 3, 2014 |
|---|---|---|---|
| Title | GERARDO ORTEGA, ET AL. V. J.B. HUNT TRANSPORT INC. | | |

(Field Decl. ¶ 5.) Field further explains that "[o]verall increases in labor costs would necessitate either an increase in the price charged to the customer, or a discontinuation of some service offerings." (*Id.*) The same is true of Defendants DCS services. In Frank Broadstreet's declaration, he affirmed that "[d]river compensation plays a critical role in [DCS] contracts as it usually represents the largest cost component to the DCS operations." (Broadstreet Decl. ¶ 6.) Common sense instructs that any increase to driver compensation would ultimately result in increased prices as well.

But beyond mere increases to the price of Defendant's services, altering its compensation system would also result in decreased efficiency and productivity. Under Defendant's ABP system, Drivers are compensated "on a per delivery basis." (Broadstreet Decl. ¶ 6; *see* Field Decl. ¶¶ 7–8, 11.) Again, as a matter of logic, it is readily apparent that a compensation system that rewards drivers for making deliveries to customers would incentivize drivers to make more deliveries, thus increasing efficiency and productivity. Yet Defendant also provides evidence that its ABP system in fact increases its drivers' efficiency and productivity.

Both Mr. Walker and Dr. Topel explain that changing to Defendant's ABP system increased DCS drivers' efficiency. According to Walker, the drivers' efficiency increased by an average of 8.2%, and their productivity by an average of 9.4%. (Walker Decl. ¶ 8.) According to Dr. Topel, efficiency increased by 6.4%, and productivity increased by 7%.[8] (Topel Decl. Ex. A, at 7, 16.) Intermodal drivers also experienced

---

that driver compensation is second only to rail costs—Field's declaration does not contradict his deposition testimony.

[8] Plaintiffs attempts to create a genuine issue by discounting Topel's report, arguing for example that he excluded "outliers" from his analysis. Nevertheless, from his report, it is clear that Dr. Topel did not simply remove "outlier" data points that would result in lower efficiency, but also removed "outlier" data that would result in higher efficiency. (*See* Topel Decl. Ex. A, at 15.) Plaintiffs also attempt to discount the relevancy of Topel's report, arguing that the sample size comprised only a small number of the overall class, and the drivers had differing job-related tasks. Nevertheless, Plaintiffs do not explain why a small sample size would not be statistically significant nonetheless, nor do they explain why differing tasks would affect the general principle of improved efficiency established by the analysis. Plaintiffs further attempt to discount the validity of Topel's findings by arguing that a person could reasonably infer increased efficiency resulted from drivers being aware they were being monitored. (Opp'n 14.) Yet, in so arguing, Plaintiffs wrest Topel's testimony and focus on only part of what he

Case 2:07-cv-08336-BRO-SH Document 168 Filed 06/04/14 Page 9 of 11 Page ID #:4668

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 07-08336 BRO (SHx) | Date | June 3, 2014 |
|---|---|---|---|
| Title | GERARDO ORTEGA, ET AL. V. J.B. HUNT TRANSPORT INC. | | |

improved efficiency by adopting the ABP system. Darren Field indicates that in 2001 Defendant paid Intermodal drivers an hourly rate but paid DCS drivers under the ABP system. (Field Decl. ¶ 10.) He further explains that given the favorable increased efficiency by DCS drivers, Defendant decided to test a similar pay structure on a small group of Intermodal drivers. (*Id.*) Field affirms that following its change to the ABP system "the productivity of the typical driver increased markedly. As a result, Intermodal operations in California discontinued hourly-based compensation in April 2002, and compensated drivers based on the mileage and activity-based pay system." (Field Decl. ¶ 14.) Consequently, Defendant was able to provide services to more customers, even to those it previously could not serve due to prohibitive costs and insufficient profit margins. (*Id.*) Although much of the data that would have permitted an analysis similar to that of the DCS drivers' increased efficiency was lost, Dr. Topel utilized Intermodal driver payroll and Human Resources records to conduct an analysis. (*See* Topel Decl. Ex. A, at 22–28.) By comparing Intermodal driver payroll records from before and after the ABP system was implemented, Dr. Topel concluded that Intermodal drivers on average received 10% higher wages under the ABP system. (*See id.*) From these results, one may readily infer that Intermodal drivers also improved their efficiency under the ABP system, as under the new payment structure driver pay is directly linked to the number of deliveries made. Thus, if the Intermodal drivers' wages increased, it is reasonable to infer the increase was due to increased deliveries completed.

Accordingly, the evidence in the record demonstrates that there is no genuine issue that Defendant's ABP system allows for greater efficiency and productivity. Common sense dictates that increased efficiency and productivity enables Defendant to serve more customers at lower prices. Therefore, in the Court's view, forcing Defendant to modify its ABP payment system by providing at least minimum wage for each hour worked would affect Defendant's services and prices in more than a "tenuous, remote, or peripheral" manner. Indeed, the effect would even be significant. Moreover, such a forced change would undoubtedly disrupt "'maximum reliance on competitive market

---

said. (*See* Humphrey Decl. Ex. K, at 115–16.) Topel explained that "the method of monitoring doesn't in any way bias the outcome of [the] study." (*Id.* at 116.) Moreover, Plaintiffs fail to explain why the Intermodal drivers also increased efficiency even though they were never monitored. As discussed below, Defendant determined the increase in efficiency based on a forensic analysis. (*See* Topel Decl. Ex. A, at 22–28.) Accordingly, Plaintiffs' arguments are unpersuasive.

Case 2:07-cv-08336-BRO-SH Document 168 Filed 06/04/14 Page 10 of 11 Page ID #:4669

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | **CV 07-08336 BRO (SHx)** | Date | June 3, 2014 |
|---|---|---|---|
| Title | GERARDO ORTEGA, ET AL. V. J.B. HUNT TRANSPORT INC. | | |

forces,' thereby [] 'efficiency, innovation, and low prices.'" *See Rowe*, 552 U.S. at 370. For these reasons, the Court holds that Plaintiffs' wage claims are preempted under the FAAAA.

Plaintiffs raise several additional arguments in opposition to the instant motion. They contend Defendant's motion should be denied because it "moves for summary judgment on an alleged theory of liability that Plaintiffs have never asserted in this case." (Opp'n 1.) True as it may be that Defendant's characterization of Plaintiffs' claims is overly broad, Plaintiffs' assertion that Defendant's motion must therefore be denied is without merit. In its motion, Defendant frames Plaintiffs' claims as an attempt to force Defendant to "pay hourly wages for all time in which drivers are under [Defendant's] control." (Mot. 1.) In their opposition, Plaintiffs argue that they "do not allege and the law does not require [Defendant] to switch from ABP to an hourly pay system, or any form of compensation scheme." (Opp'n 3.) Instead, Plaintiffs attempt to argue that Defendant simply must "include payment for those activities" "that were previously excluded" from its compensation system. (Opp'n 3.) It is not clear what exactly Plaintiffs are asserting. (*See* Opp'n 3:10–17.) It appears they are advocating that Defendant do exactly what it claims it has done all along—use a "piece rate compensation system [that] fully compensates drivers for [all] activities as part of a rate measured by the length of the routes driven." (Mot. 17; Field Decl. ¶ 8.) Nevertheless, even assuming *Armenta* does permit Defendant do use some type of piece rate compensation system, it is clear that Defendant must pay its drivers at least minimum wage for each hour worked. *See* 135 Cal. App. 4th at 323–24; *accord Cardenas v. McLane Foodservices Inc.*, 796 F. Supp. 2d 1246 (C.D. Cal. 2011) ("[T]his court finds that a piece-rate formula that does not compensate directly for all time worked does not comply with California Labor Codes, even if, averaged out, it would pay at least minimum wage for all hours worked."). Because the entire purpose of a piece-rate or ABP compensation system is to incentivize employees to minimize certain "non-productive" activities, forcing Defendant to provide hourly pay for those "non-productive" activities would largely limit the incentive to improve efficiency, effectively inhibiting the ABP system's objective. Accordingly, even if Plaintiffs are correct, and Defendant could still implement some type of piece-rate compensation system, because Defendant would still have to provide hourly compensation under *Armenta*, Plaintiffs' claims are yet preempted under the FAAAA.

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 07-08336 BRO (SHx) | Date | June 3, 2014 |
|---|---|---|---|
| Title | GERARDO ORTEGA, ET AL. V. J.B. HUNT TRANSPORT INC. | | |

    Plaintiffs also contend the Ninth Circuit's decision in *Mendonca* precludes a finding of preemption under the FAAAA.  (*See* Opp'n 23.)  In *Mendonca*, the Ninth Circuit held that, although it certainly had some effect, the effect of California's Prevailing Wage Law on public works contractors' prices, routes, and services was too "indirect, remote, and tenuous" to be preempted by the FAAAA.  *Cal. for Safe & Competitive Dump Truck Trans. v. Mendonca*, 152 F.3d 1184, 1189 (9th Cir. 1998).  This case is distinguishable from *Mendonca*, however.  Here, forcing Defendant to change its ABP compensation system would have greater effect than in *Mendonca*.  Not only would it increase the wages and therefore affect prices, but it would also reduce Defendant's efficiency and productivity, thus inhibiting Defendant's ability to effectively provide services to its customers and therefore effectively compete in the marketplace.  Accordingly, Plaintiffs' contention regarding the court's holding in *Mendonca* is unpersuasive.

## V.    CONCLUSION

    For the foregoing reasons, the Court finds that Plaintiffs' wage claims are preempted by the FAAAA.  Accordingly, Defendant's motion for summary judgment on those claims is GRANTED.  Defendant must submit a proposed judgment consistent with this order no later than June 16, 2014.

    **IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | rf |