**MARLIN & SALTZMAN**
Stanley D. Saltzman, Esq. (SBN 90058)
Adam M. Tamburelli, Esq. (SBN 301902)
29800 Agoura Road, Suite 210
Agoura Hills, California 91301
Telephone: (818) 991-8080
Facsimile: (818) 991-8081
ssaltzman@marlinsaltzman.com
atamburelli@marlinsaltzman.com

**THE CULLEN LAW FIRM, APC**
Paul T. Cullen, Esq. (SBN 193575)
19360 Rinaldi Street, #647
Porter Ranch, California 91326
Telephone: (626) 744-9125
Facsimile: (626) 744-9436
paul@cullenlegal.com

*Attorneys for Plaintiffs and the Class*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERARDO ORTEGA, AND MICHAEL D. PATTON, individually and on behalf of themselves, all others similarly situated, and the general public,<br><br>          Plaintiffs,<br><br>v.<br><br>J. B. HUNT TRANSPORT, INC., an Arkansas corporation; and DOES 1 to 100, inclusive,<br><br>          Defendants. | **CASE NO. 07-CV-08336-RGK-AFM**<br>(Hon. R. Gary Klausner)<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Proposed Order, Declarations of Stanley D. Saltzman and Paul Cullen, and Stipulation and Proffered Second Amended Complaint filed concurrently herewith]<br><br>Date:   October 29, 2018<br>Time:   9:00 a.m.<br>Room:  850<br>Trial:   February 19, 2019 |

**TO:  ALL PARTIES HEREIN AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on October 29, 2018, at 9:00 a.m. or as soon thereafter as the matter can be heard in Courtroom No. 850 in the above entitled courthouse located at 255 Temple Street, Los Angeles, California, Plaintiffs, on their own behalf, and on behalf of the proposed settlement class, will move for preliminary approval of a class-wide settlement reached with Defendant J. B. Hunt Transport, Inc. ("Defendant"). Defendant does not oppose this Motion.

This Motion is based upon this Notice, the accompanying Memorandum of Points & Authorities, the declarations of Stanley D. Saltzman, Adam M. Tamburelli, and Paul Cullen, the Settlement Agreement entered into by the Parties attached as Exhibit 1 to the Declaration of Stanley D. Saltzman ("Saltzman Decl."), and upon such further evidence, both documentary and oral, as may be presented at the hearing of said motion.

Plaintiffs hereby request that the Court enter an Order as follows:

(1) Certify a settlement class defined as follows:

> **All California-based, local and regional intermodal and local and regional Dedicated Contract Services drivers employed by J.B. Hunt at any time between November 19, 2003 and December 8, 2018.**

(2) Preliminarily approving the proposed settlement, and approving the [Proposed] Order Granting Preliminary Approval of the Class Action Settlement, filed herewith, or such other Order granting the motion as the Court may issue;

(3) Directing that the settlement class be given notice of the settlement in the form of the proposed Notice agreed to by the Parties, attached as Exhibit 2 to the Saltzman Decl., or such other Order granting the motion as the Court may issue; and

(4) Confirming the currently-scheduled February 11, 2019 date for the final fairness hearing, at which the Court will consider final approval of the settlement, entry of a proposed final judgment, and Class Counsels' application for an award of attorneys' fees and reimbursement of costs and expenses, as well as a service award for each of the Class Representatives.

DATED:  October 1, 2018

**MARLIN & SALTZMAN, LLP**
**THE CULLEN LAW FIRM**

By:  s/  Stanley D. Saltzman
            Stanley D. Saltzman, Esq.
            Adam M. Tamburelli, Esq.
            Attorneys for Plaintiffs

# **TABLE OF CONTENTS**

I.      INTRODUCTION AND NATURE OF RELIEF SOUGHT ....................................1

II.     SUMMARY OF THE LITIGATION................................................................2

   A.   Nature of the Case ................................................................................2

   B.   Litigation History ................................................................................3

     1.  Summary of Significant Events in the Case ................................3

     2.  Discovery and Investigation Leading up to Class Certification ............................5

     3.  Post-Certification Litigation ................................................5

     4.  Mediation ................................................................................7

III.    SUMMARY OF THE SETTLEMENT ................................................................7

   A.   Summary of Settlement Terms ................................................................7

   B.   Settlement Value ................................................................................8

     1.  Unpaid Wage Claims – Labor Code § 1194 and Wage Order ................................9

     2.  Unpaid Rest Break Claim – Labor Code § 226.7/Wage Order ............................10

     3.  Wage Statement Claim – Labor Code § 226 ................................10

     4.  Waiting Time Claim – Labor Code § 203 ................................11

     5.  Total Valuation of Plaintiffs' Labor Code Claims ................................11

     6.  Private Attorneys General Act Claim – Labor Code § 2698 ................................11

     7.  Additional Considerations................................................................12

IV.     CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE............13

V.      THE SETTLEMENT EXCEEDS THE STANDARDS FOR PRELIMINARY APPROVAL ................................................................16

VI.     NATURE AND METHOD OF CLASS NOTICE ................................................18

VII.    CLAIMS ADMINISTRATION ................................................................19

VIII.   ATTORNEYS' FEES AND COSTS................................................................19

IX.     SERVICE AWARD FOR NAMED PLAINTIFFS................................................20

X.      CONCLUSION................................................................................20

iv

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 07-CV-08336-RGK-AFM

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prod., Inc. v. Windsor*
   521 U.S. 591 (1997)...................................................................................14

*Brinker Restaurant Corp. v. Hohnbaum*
   53 Cal.4th 1004 (2012).............................................................................3, 5

*Canela v. Costco Wholesale Corp.*
   2018 WL 3008532 (N.D. Cal. June 15, 2018)........................................12

*Class Plaintiffs v. Seattle*
   955 F.2d 1268 (9th Cir. 1992)..................................................................16

*Cotter v. Lyft, Inc.*
   176 F.Supp.3d 930 (N.D. Cal. April 7, 2016)..........................................11

*Hanlon v. Chrysler Corp.*
   150 F.3d 1011 (9th Cir. 1998)..............................................................16, 18

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*
   2013 WL 12333442 (N.D. Cal. Jan. 8, 2013)..........................................15

*In re Heritage Bond Litigation*
   2005 WL 1594403 (C.D. Cal. June 10, 2005)..........................................16

*In re Initial Pub. Offering Sec. Litig.*
   226 F.R.D. 186 (S.D.N.Y. 2005)..............................................................15

*In re Skilled Healthcare Grp., Inc. Sec. Litig.*
   2011 WL 280991 (C.D. Cal. Jan. 26, 2011).............................................17

*Jordan v. NCI Grp., Inc.*
   2017 WL 1821122 (C.D. Cal. Mar. 22, 2017)..........................................12

*Lewis v. Green Dot Corp.*
   2017 WL 4785978 (C.D. Cal. June 12, 2017)..........................................15

*Morey v. Louis Vuitton N. Am., Inc.*
   2014 WL 109194 (S.D. Cal. 2014)...........................................................15

*Nat'l Rural Telecommunication Cooperative v. DirecTv, Inc.*
   221 F.R.D. 523 (C.D. Cal. 2004)..............................................................17

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco*
   688 F.2d 615 (C.D. Cal. 1982)..................................................................16

*Ortega v. J.B. Hunt*
   694 Fed.Appx. 589 (9th Cir. 2017).............................................................5

v

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 07-CV-08336-RGK-AFM

*Rodriguez v. West Publishing Corp.*
  563 F.3d 948 (9th Cir. 2009) ................................................................ 18

*Rosenburg v. I.B.M.*
  2007 WL 128232 (N.D. Cal. 2007) ........................................................ 15

*Staton v. Boeing Co.*
  327 F.3d 938 (9th Cir. 2003) ................................................................ 17

*True v. Am. Honda Motor Co.*
  749 F.Supp.2d 1052 (C.D. Cal. 2010) .................................................. 16

**Statutes**

Labor Code § 1194 ..................................................................................... 9

Labor Code § 203 ............................................................................... iv, 10

Labor Code § 226 ..................................................................................... 10

Labor Code § 226.7 ........................................................................... iv, 10

Labor Code § 2698 ................................................................................... 11

Labor Code § 2699 ....................................................................... iv, 8, 11

**Rules**

Fed. R. Civ. P. 23 ........................................................................... passim

Fed. R. Civ. P. 30 ...................................................................................... 5

**Treatises**

*Manual of Complex Litigation*, Fourth (2004) ..................................... 16

Newberg & Conte, *Newberg On Class Actions*, 3d Ed. (1992) ........... 16

**MEMORANDUM OF POINTS & AUTHORITIES**

## I.    INTRODUCTION AND NATURE OF RELIEF SOUGHT

Plaintiffs and the proposed settlement class represented herein seek preliminary approval of a substantial <u>non-reversionary</u> settlement of all claims asserted in the Proposed Second Amended Complaint ("SAC") lodged herewith pursuant to the Stipulation of the Parties. The settlement includes a compromise of all claims that have been alleged to date, as well as the California Private Attorneys General Act ("PAGA") claim asserted in the SAC pursuant to the required notice sent to the California Labor and Workforce Development Agency ("LWDA") and Defendant's counsel on November 6, 2008. The total monetary value of the proposed settlement is $15,000,000.

This case has been extensively litigated for eleven years. It involved novel and cutting-edge legal theories relating to class certification, liability under California's wage and hour laws, and federal preemption. In fact, the case was previously dismissed based on federal preemption grounds, re-instated by the Ninth Circuit, and finally decertified six weeks before the scheduled class trial. At the time of decertification, this Court had also rendered two critical rulings on the Parties' motions for partial summary judgment.

At the time the Parties agreed to the settlement, Plaintiffs had retained Washington D.C. based appellate specialist, Deepak Gupta of Gupta Wessler PLLC, to prepare and file on August 22 a petition under Rule 23(f) for interlocutory review. Plaintiffs had also filed a motion in the Ninth Circuit to stay all proceedings pending appellate review.

As this Court is aware, in light of the voluminous motions and comprehensive briefing submitted for the recent Pre-Trial Conference, the Parties were engaged in extensive pre-trial preparation. The unwavering commitments of the litigants played out under the ever-present specter of Plaintiffs' efforts to obtain reversal of decertification, which would then trigger yet another Defense petition for Supreme Court review. The Parties therefore faced many additional years of litigation beyond those already incurred, with ongoing uncertainty relating to certification, liability, and preemption.

While the Parties had previously engaged in two formal mediation sessions under

1

PLAINTIFFS' MEMORANDUM ISO THEIR MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 07-CV-08336-RGK-AFM

the supervision of Mark S. Rudy, Esq., a highly-respected class action mediator, they had been unable to resolve the case. Nevertheless, they maintained an open discourse.

Against this very complex backdrop, the Parties were finally able to reach a proposed **class-wide settlement** in the amount of **$15 million.** The details of the agreement are set forth in the Class Action Settlement Agreement, attached as Exhibit 1 to the Declaration of Stanley D. Saltzman ("Saltzman Decl"), at ¶ 20.

For Plaintiffs, the settlement represents both a sizeable recovery and a significant compromise of their claims, recognizing the impact of decertification. For Defendant, this settlement undoubtedly represents both an uncomfortably large yet ultimately acceptable compromise, reflecting the risks of reversal of the order of decertification, which would once again expose the Defendant to very significant exposure. Accordingly, the Parties resolved the case and thereby avoid continued risks, uncertainties, and delay.

The settlement provides for a ***non-reversionary*** payment of **$15 million**. ***No class members will be required to submit claim forms to receive their share of the settlement proceeds.*** All participating settlement class members (i.e. those who do not opt out of the settlement), will have a check mailed to them once the settlement becomes final.

Additionally, the Parties have agreed on the form of the Notice of Class Action Settlement, attached as Exhibit 2 to the Saltzman Decl. The Parties have further agreed to the designation of CPT Group, Inc. as the Settlement Administrator. The Settlement Agreement also contains all other necessary terms of the settlement.

The Parties believe that the proposed settlement easily comports with what is fair, reasonable, and adequate such that the Court should grant preliminary approval.

## II.  SUMMARY OF THE LITIGATION

### A.  Nature of the Case

Plaintiffs and the proposed settlement Class Members, certified by this Court on May 18, 2009, with decertification denied by this Court on December 18, 2012, are/were employed by Defendant as employee truck drivers primarily driving within the state of California. Plaintiffs allege that Defendant has utilized a pay plan which violates various

provisions of the California Labor Code. In a recent partial summary judgment ruling in favor of Plaintiffs, this Court found that the plan did, in fact, violate California law. Dkt. 280. Defendant continues to maintain that its pay plan is legal and has indicated that it fully intended to seek appellate review of any final order finding otherwise.

Plaintiffs alleged that Defendant's ABP compensation plan violated California law in that it did not allocate pay for certain tasks drivers had to perform, i.e. pre- and post-trip inspections, loading, unloading, fueling, maintenance, hooking or unhooking trailers, waiting time, and completing paperwork, and because Defendant did not provide paid rest breaks. Defendant denied its compensation plan violated the law, and also argued that its preemption defenses were still viable despite the Ninth Circuit's ruling to the contrary. Plaintiffs obviously disagreed.

The long and winding path of this case amply demonstrates the risks of litigation. Even with the class decertified, Plaintiffs made clear to Defendant that they would continue to litigate through final appellate review absent a substantial settlement. Such a settlement is now presented—one which will receive broad support from the settlement class members. Accordingly, preliminary approval and notice to the class are requested.

**B.** **Litigation History**

1. **Summary of Significant Events in the Case**

In the past eleven years, the following milestone events have occurred in this case:

- It was filed on November 19, 2007, and removed to this Court on December 21, 2007;
- The Class was certified on May 18, 2009, and then stayed pending the California Supreme Court's ruling in *Brinker Restaurant Corp. v. Hohnbaum*, 53 Cal.4th 1004 (2012), which clarified the law on meal and rest breaks (Dkt. 64);
- After the stay was lifted, the Defendant then filed a motion for decertification, **which was denied by this Court** on December 18, 2012 (Dkt. 87);
- Defendant then filed a motion for judgment on the pleadings, claiming that California meal and rest break claims were preempted by the FAAAA. **Said motion**

1   **was granted** on October 2, 2013 (Dkt. 124);

2   • Defendant then filed a motion for summary judgment, asserting that California

3   wage claims were also preempted by the FAAAA. **Said motion was also granted**

4   on June 4, 2014 (Dkt. 168);

5   • Plaintiffs' appealed the two preemption rulings listed above on June 27, 2014;

6   • The Ninth Circuit vacated both orders on July 31, 2017 (Dkt. 186);

7   • Defendant then unsuccessfully sought both e*n banc* review before the Ninth Circuit,

8   and a petition for a writ of certiorari in the Supreme Court;

9   • Thereafter, the case was remanded to this Court on November 16, 2017, which then

10   promptly set the case for trial (Dkt. 197);

11   • Plaintiffs' motion for partial summary judgment was granted in part and denied in

12   part, with the Court determining the pay plan violated California law because it

13   failed to separately compensate the drivers for various required tasks, and failed to

14   separately pay for rest breaks (Dkt. 270);

15   • Defendant's motion for partial summary judgment was also granted in part and

16   denied in part, with the Court re-affirming its prior partial summary judgment ruling

17   that the rest break policy violated California law, and granting summary judgment

18   and dismissing Plaintiffs' claims alleging willful or bad faith conduct as well as the

19   claim for failure to provide paid meal breaks (Dkt. 280);

20   • At that same time, the Court granted the motion for decertification (Dkt. 280);

21   • Plaintiffs' appellate specialist Deepak Gupta filed a Rule 23(f) petition for review

22   on August 22, 2018; Defendant's opposition was filed on September 4;

23   • Plaintiffs separately filed a motion in the Ninth Circuit on August 24, 2018, seeking

24   a stay of the individual plaintiffs' trial pending the Ninth Circuit's decision on

25   Plaintiffs' Rule 23(f) petition, which Defendants opposed;

26   • Only after all of the above was completed, and more, and the individual trial date

27   approaching, did the Parties reach the settlement now before this Court.

28

4

PLAINTIFFS' MEMORANDUM ISO THEIR MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 07-CV-08336-RGK-AFM

### 2. Discovery and Investigation Leading up to Class Certification

From its inception, the case was heavily litigated, including extensive pre-certification discovery covering both liability and damages, and production of extensive payroll and pay-related databases, payroll records, Department of Transportation logs, and other driver logs. Plaintiffs also obtained corporate policy documents relating to Defendant's pay plans and related documents, all geared towards possible certification of the case. Plaintiffs deposed multiple corporate witnesses, including Rule 30(b)(6) designees. Defendant also deposed both proposed class representatives. Thereafter, Plaintiffs moved for class certification on March 16, 2009. Dkt. 59. The Court granted the motion on May 18, 2009, but stayed the case pending the *Brinker* decision. Dkt. 64.

### 3. Post-Certification Litigation

Following certification and the lifting of the stay, Defendant filed its first motion for decertification on September 27, 2012. Dkt. 77. After full briefing, that motion was denied on December 18, 2012. Dkt. 87. Plaintiffs then renewed their request for dissemination of class notice. In response, Defendant again moved for a complete stay of the case—this time pending the decision by the Ninth Circuit in the *Dilts* preemption case. Plaintiffs successfully opposed that stay, but the Court again deferred the class notice. Thereafter, Defendant moved for judgment on the pleadings as to the meal and rest break claims based on FAAAA preemption, which motion was granted on October 2, 2013. Dkt. 124. Class notice was again deferred by the Court. Defendant then followed with a preemption summary judgment motion directed at Plaintiffs' wage claims on October 18, 2013. Dkt. 125. That motion was also granted by the Court. Dkt. 168.

Plaintiffs then appealed both of the above preemption rulings. After full briefing and a three-year delay, Plaintiffs fully prevailed on their appeal, and the two orders were vacated. *See Ortega v. J.B. Hunt*, 694 Fed.Appx. 589 (9th Cir. 2017).

Defendant then sought *en banc* review by the Ninth Circuit, which was denied, and then petitioned for a writ of certiorari to the U.S. Supreme Court. After full briefing, the petition was denied.

Thereafter, with this Court having set a very prompt trial date, the Parties engaged in what can only be described as frenetic, final pre-trial discovery proceedings involving at times as many as twenty lawyers combined on the two sides. This Court eventually issued its two partial summary judgment rulings in July and August, which were strongly favorable to the Plaintiffs. Unfortunately for the Plaintiffs, however, the Court then also decertified the class, which had been certified almost nine years earlier.

The Order decertifying the class triggered yet another course of furious briefing involving Plaintiffs' Rule 23(f) petition and their concurrent motion to stay the individual trial, while the Parties also engaged in massive efforts to comply with the many pre-trial filing requirements. This included almost twenty motions in limine filed and opposed, trial briefs, memoranda of contentions of fact and law, stipulations as to facts, proposed jury instructions, a final proposed pre-trial order, and much more.

At the same time, the Parties prepared the joint exhibit and witness lists, met with and interviewed potential trial witnesses, and worked with their respective experts to finalize their reports and arrange their depositions. While the decertification order served to limit the trial to the two representative Plaintiffs, both sides recognized the critical importance of the trial to the still sought-after class action, as eventual post-trial appeals of both certification and all legal and factual issues would undoubtedly relate to and impact the proposed settlement class as a whole if it was re-instated by the Ninth Circuit.

While all of the foregoing matters progressed at break-neck speed, the Parties maintained an open settlement dialogue. Plaintiffs insisted that those negotiations be on a class-wide basis, as they recognized their fiduciary obligations to the class, which they were actively pursuing via their Rule 23(f) Petition and, in the alternative, intended to pursue in post-trial appellate review of this Court's decertification order. Thus, at all times, Plaintiffs would only engage in class-wide negotiations, never entertaining the idea of obtaining any undue benefit to themselves by way of a "golden parachute" type settlement wherein they might obtain an outsized payment to themselves in exchange for giving up the claims of the class members for whom they had been standing up for the

entire eleven years of litigation. Thus, Plaintiffs never considered individual settlements.

### 4. Mediation

The Parties engaged in formal mediation sessions on June 7, 2016 and April 2, 2018, utilizing the services of widely-respected class action mediator Mark S. Rudy, Esq. Despite devoting substantial time and efforts to the process, the mediations failed. However, the Parties continued settlement discussions, and Mr. Rudy continued to speak with lead counsel for each side on a regular basis, including several calls with lead Plaintiffs' counsel during the week in which the settlement was finally reached.

## III. SUMMARY OF THE SETTLEMENT

### A. <u>Summary of Settlement Terms</u>

The comprehensive terms of the settlement are set forth in the Class Action Settlement Agreement attached to the Saltzman Decl. as Exhibit 1. The primary terms thereof include the following:

- Defendant will pay a total $15,000,000.00, which is the Gross Settlement Amount ("GSA"), all of which is non-reversionary;
- The GSA includes all payments to settlement class members, employee-side payroll taxes, settlement administration costs, attorneys' fees and costs, service awards, as well as the payment to the LWDA under the PAGA claim. Defendant's employer-side payroll taxes shall be paid separately by the Defendant and not out of the GSA;
- There will be no claims process of any kind imposed upon the settlement class members. All settlement class members who do not opt out of the settlement will be mailed their respective settlement checks following final approval;
- As a condition of the settlement, the Parties are also jointly requesting that the Court grant certification of the proposed settlement class of drivers;
- The Parties have agreed that $500,000 of the GSA will be paid to the LWDA to resolve PAGA claims. The Parties thus request that the Court grant leave to file a Second Amended Complaint adding the PAGA claim (pursuant to the stipulation filed herewith), based on the Notice Letter Plaintiffs served on the LWDA and

7

PLAINTIFFS' MEMORANDUM ISO THEIR MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 07-CV-08336-RGK-AFM

Defendant's counsel on November 6, 2008, to which letter the LWDA never responded. Upon preliminary approval of the settlement and the filing of the amended complaint, Plaintiffs will serve a notice of intended settlement of the PAGA claims upon the LWDA, as required by Labor Code § 2699(l)(2);

- Class Counsel shall apply to the Court at final approval for an award of fees and costs. Said fees include all of the work performed in the eleven years to date, and all remaining work in securing Court approval of the Settlement, making sure that the Settlement is fairly administered, and obtaining dismissal of the action. Defendant will not object to a fee request by Plaintiffs' counsel in an amount not to exceed one-third (1/3) of the Settlement fund, nor will Defendant object to a request by Class Counsel for reimbursement of reasonable costs and expenses in an amount not to exceed $500,000, as documented by their cost billings;

- Each of the two representative Plaintiffs, who have been pursuing this matter for the entire eleven years of the action and whose extensive participation will be further detailed in connection with final approval, will seek a service award of $15,000, to which the Defendant does not object;

- Each class member who does not opt out of the settlement will be entitled to receive a proportionate share of the total Net Settlement Fund based upon his or her respective share of the total class' workweeks;

- The parties have selected CPT Group, Inc. as the Claims Administrator. CPT carried out the court-approved mailing of the original class certification order less than six months ago, and will be able to promptly meet all similar mailing and payment obligations going forward; and

- Pursuant to this Court's order of September 28, 2018, the proposed settlement class members will have thirty (30) days from the date the Notice is mailed to postmark any objections to the settlement, or to opt out of the settlement class. Dkt. 346.

### B.    Settlement Value

As with all settlements, the settlement represents a compromise. There were

8

PLAINTIFFS' MEMORANDUM ISO THEIR MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 07-CV-08336-RGK-AFM

significant disagreements between the Parties as to the facts, the law, and the application of both to Defendant's business model. Plaintiffs believed that the two recent orders on summary judgment would have greatly advanced the issues at the class trial, but the class trial was derailed by the Court's contemporaneous order decertifying the class. That Order left the Plaintiffs with their two individual cases, representing a total value of less than $20,000, plus the "value" of the eventual appeal of the decertification order.

Because of the unique procedural posture of the case at the time of settlement, the Parties could not use normal settlement valuation methodologies, and the Parties were left to negotiate settlement with the primary factor being the likelihood of Plaintiffs succeeding on their appeal of decertification in the Ninth Circuit. Thus, the negotiations took place under a highly unusual framework.

That said, both sides still considered the ever-present underlying case value in the event the appeal was successful. However, if the appeal was ultimately unsuccessful then the case value was nominal at best, considering that after eleven years of litigation and appeals, plus almost $500,000 in costs, the $20,000 value for the two individual cases was insubstantial. Given the extensive case and trial workup, the Parties had their own views as to the value of the respective class claims (if they were reinstated) and the relative strengths and weaknesses thereof, such that they were able to consider all available information for what was essentially a "trial-ready" case when negotiating a fair and just resolution of the decertified case.

The following information is pertinent to the analysis. To be clear, it represents a conservative estimation of value, recognizing the palate on which this painting is presented.

### 1.     Unpaid Wage Claims – Labor Code § 1194 and Wage Order

Plaintiffs long recognized that the available data/information would not be sufficient to support class-wide damages for some of the claimed tasks. Thus, for trial purposes, Plaintiffs' experts focused on the pre- and post-trip inspections, which were the strongest of the claims, followed by the fueling time claim, and finally the most difficult

9

PLAINTIFFS' MEMORANDUM ISO THEIR MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 07-CV-08336-RGK-AFM

to prove claim, which was the time drivers spent completing paperwork.

In terms of valuation, and including pre-trial interest, Plaintiffs were confident that the inspections could potentially be valued as high as $20 million, the fueling at $6 million and the paperwork at $10.9 million. Allowing for normal trial risks and uncertainties, for settlement purposes the inspections should be discounted by 35% to $13 million, the fueling discounted by 50% to $3 million, and the most difficult paperwork claim discounted for trial value by 65%, to $3.8 million. The value of this claim for settlement vs. trial purposes is thus reasonably in the range of $19,800,000.

If the class was still certified, the settlement approval valuation would then follow with an analysis of the risk of the class either not prevailing (at trial or on appeal) and would also consider the risk of decertification. The risk of Plaintiffs not prevailing at trial, or being reversed on appeal, is still present. The second risk is no longer a risk—it is a reality, as the case has been decertified. As such, the value of these claims at this time is presently $0. Taking all of this into account, it is more than reasonable to reduce the above stated value from $19.8 million by 50%, to $9.9 million.

## 2. Unpaid Rest Break Claim – Labor Code § 226.7/Wage Order

The value of the claim for the failure to provide paid rest breaks, without interest (the right to interest on these claims is highly disputed and unsettled) could be valued as high as $60 million if the class prevailed for each and every day worked. But it rarely works out that way at trial. For settlement approval valuation purposes, a more conservative and realistic valuation is for 50% of full value, or $30 million.

## 3. Wage Statement Claim - Labor Code § 226

This claim, as with others, was problematic. Plaintiffs faced a statute of limitations defense, and issues relating to whether the alleged violations were "knowing and intentional"—especially since this Court found a lack of "willfulness" regarding Plaintiffs' Labor Code § 203 claim. The gross value of the claim was approximately $19.7 million. Applying a 50% discount factor would reduce this claim to $9.85 million.

#### 4. Waiting Time Claim – Labor Code § 203

This Court previously granted summary judgment on Plaintiffs' § 203 penalties arising out of the alleged failure to pay all wages owed to all terminated employees and as a result dismissed that claim. Dkt. 280. As such, Plaintiffs did not include this claim in their pre-trial damage models, and it merits no further consideration.

#### 5. Total Valuation of Plaintiffs' Labor Code Claims

Based on the foregoing analysis, this case presented a reasonable trial exposure to the Defendant totaling $49,750,000. While Plaintiffs would of course argue strenuously for a higher valuation if the class case was tried, for reasonable case settlement presentation purposes, the $15,000,000 settlement represents a 30% recovery. In any heavily-contested case involving multiple appeals, a 30% recovery would certainly be considered acceptable. Where, as here, the class has been decertified and thus there is almost no value (at trial or otherwise) other than in the "value" of the appeal, this is an excellent recovery, comparing the settlement value against the trial value.

#### 6. Private Attorneys General Act Claim – Labor Code § 2698

The only claim not factored in above is the PAGA claim included in the proposed SAC. Although Plaintiffs had not previously amended the Complaint to assert a PAGA claim, Plaintiffs did provide notice of this claim to the LWDA and Defendant in 2008, and the Parties discussed and considered this claim in all class-wide settlement discussions. By stipulation of the Parties, they now request its inclusion as part of the settlement since they have factored it into the settlement discussions. The Parties have agreed to allocate the rather large sum of $500,000 to this claim, resulting in a 75% payment of that total to the State ($375,000), with the remaining $125,000 being returned to the Net Settlement Fund for distribution to the participating class members.

The evaluation of this claim begins with the recognition that PAGA awards are purely within the significant discretion of the court. Cal. Lab. Code § 2699(e)(2); *Cotter v. Lyft, Inc.*, 176 F.Supp.3d 930, 939 (N.D. Cal. April 7, 2016). Additionally, there is significant uncertainty about the continued validity of this claim in federal court. First,

on August 22, 2018, the Ninth Circuit granted review of the following two certified questions: (1) whether, absent class certification, a PAGA plaintiff in federal court has Article III standing to represent absent aggrieved employees; and (2) whether a PAGA plaintiff in federal court can represent absent aggrieved employees without qualifying for class certification under Rule 23. *See Canela v. Costco Wholesale Corp.*, 2018 WL 3008532, at \*1 (N.D. Cal. June 15, 2018). Second, although the weight of authority in federal courts in California supports the argument that there is no "manageability" requirement for PAGA claims, some courts do impose such a requirement. *See Jordan v. NCI Grp., Inc.*, 2017 WL 1821122, at \*5 (C.D. Cal. Mar. 22, 2017) (analyzing conflicting cases). Again, this Court decertified the class on the basis that this element was not met.

Thus, the claim is inherently difficult to "value", but for purposes of this settlement, the Parties have allocated the significant amount of $500,000.

### 7.   Additional Considerations

In evaluating settlements, Courts often examine average payments. The analysis here includes a review of the payments to each "full time equivalent" driver ("FTE") position, as well as average payments to each and every driver in the proposed settlement class. There have been approximately 1,245 drivers occupying employee driving positions with the Defendant at any given time during the entire class period. While there are more than 11,000 drivers in the settlement class, that high total simply reflects the reality that truck driver employees change companies often, as the work is difficult, demanding and tiring, so changes are often made by drivers. Thus, over the life of the case, each of the 1,245 positions has been held by about 10 different drivers.

Each FTE position represents a potential driver who has held the position for the entire 15 years of the class. There may or may not be any such persons. But to evaluate the settlement payment and account for the high turnover rate in the trucking industry, the most accurate payment measure is the amount that an FTE driver would receive, because the losses are measured over the entire class period per position. The FTE

payment here, on a gross basis before consideration of deductions for fees, costs, etc., would be $12,000. This is arrived at by simply dividing the total $15,000,000 by the total of 1,245 positions (one position for each FTE), thus yielding $12,000. Therefore, any driver who was employed by the Defendant for the entire class period would be entitled to be paid $12,000 before case deductions, a rather extraordinary recovery especially considering the current posture of the case.

A second measure courts often look to when reviewing class settlements is the simple average payment per class member. Again, with the total $15,000,000 divided by the total of about 11,000 drivers, the resulting average payment would be $1,363, before normal case deductions. This too is a more than satisfactory resolution amount, and one which, based on Class Counsel's past experience, will be highly appreciated by the participating settlement class members.

Finally, the FTE number discussed above of $12,000 works out to just about $800 per year of employment, such that a driver in the class for five years should be expected to receive $4,000, and the ten-year driver $8,000, and so on. These are strong numbers, and accordingly, the Court should readily grant settlement approval.

## IV.   CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

This Court has twice found that Plaintiffs satisfied all of the Rule 23 requirements and thus certification was proper. Dkts. 64, 87. The propriety of certification was again fully briefed only two months ago, and although the Court decertified the class, it did not disturb the two prior rulings that Rule 23(a)'s requirements were met; rather, it found that Rule 23(b)'s predominance requirement was not met due to manageability concerns. However, and critically, for settlement purposes, manageability is not an issue, and therefore, Rule 23(b)'s requirement that common questions predominate is still met here.

Rule 23(b)(3), under which certification was initially granted and under which it is now requested for settlement purposes, is satisfied if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to the other available methods for

fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). However, in the context of settlement, courts—including the Supreme Court—have long held that Rule the predominance requirement is relaxed since the Court "need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

This Court has **twice** found that common questions predominate. First, on May 18, 2009, this Court found that Rule 23 was met and that "[t]he predominant question is whether Defendant's compensation system achieved its articulated goal: compensation for *all* activities incident to a delivery." Dkt. 64 at 23. Three-and-a-half years later, it denied Defendant's first motion to decertify, finding that "[w]hether the overarching compensation scheme JBH utilizes actually pays its employees in compliance with California regulations is a question that is capable of a common answer." Dkt. 87 at 5-6.

When the Court decertified the class on August 7, 2018, it did not disagree with the previous certification rulings that the central legal and factual question in the litigation was whether Defendant's ABP compensation system violated California law. Rather, the Court reasoned that Plaintiffs had not satisfied Rule 23(b)(3)'s "predominance" requirement because "[t]o establish class wide liability, Plaintiffs would have to prove that each individual class member drove for an account that failed to separately pay for at least one of the eight nonproductive tasks at issue," but that "Plaintiffs have proposed **no manageable way** to narrow the class or determine which class members were subject to the unlawful ABP plan without looking at each class members' individual activity logs and payroll documents." Dkt. 280 at 5-6 (emphasis added).

Thus, since this Court did not find issue with any other aspect of the prior certification of the case, nor the conclusions made at the first decertification motion stage, Plaintiffs address herein only the specific issue upon which this Court rested its conclusion that decertification should be granted, rather than each element of Rule 23.

As noted above, the Court granted decertification based on its finding that trial of the class claims would not be manageable because of individual factual inquiries relating

14

PLAINTIFFS' MEMORANDUM ISO THEIR MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 07-CV-08336-RGK-AFM

to which class members had been damaged by the challenged conduct. However, the Supreme Court, and many courts thereafter, have ruled that such issues are not a consideration when evaluating the appropriateness of a class-wide settlement. *Amchem*, 521 U.S. at 620; *see also Lewis v. Green Dot Corp.*, 2017 WL 4785978, at *6 (C.D. Cal. June 12, 2017) ("[C]ourts need not consider the Rule 23(b)(3) considerations regarding manageability of the class action, as settlement obviates the need for a manageable trial.") (*citing Morey v. Louis Vuitton N. Am., Inc.*, 2014 WL 109194, at *12 (S.D. Cal. 2014) ("[B]ecause this certification of the Class is in connection with the Settlement rather than litigation, the Court need not address any issues of manageability that may be presented by certification of the class proposed in the Settlement Agreement."), and *Rosenburg v. I.B.M.*, 2007 WL 128232, at *3 (N.D. Cal. 2007) (discussing "the elimination of the need, on account of the [s]ettlement, for the Court to consider any potential trial manageability issues that might otherwise bear on the propriety of class certification")).

This settlement eliminates the concerns the Court expressed about the risk of mini trials being necessary to resolve individual factual issues. In the settlement, the Parties have agreed who should be in the settlement class and how the settlement funds should be allocated, so there will be no need for individual inquiries into each driver's records to determine whether and how much he or she should receive.

The central legal question identified at each certification motion herein continues to bind the class together sufficiently for settlement purposes: whether Defendant's ABP compensation system complied with California law. Since "it [was] only the difficulty of *answering* that question for plaintiffs . . . that defeat[ed] a finding of predominance," the class should be certified for settlement purposes. *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 195 (S.D.N.Y. 2005); *see also In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2013 WL 12333442, at *12 (N.D. Cal. Jan. 8, 2013) ("The common issues of liability arising from the . . . alleged illegal conduct predominate over any individual issues especially given that manageability is not an issue insofar as a

settlement class is concerned."). As the settlement here eliminates any concerns the Court had with a class trial, Plaintiffs request certification for purposes of settlement only.

## V.   THE SETTLEMENT EXCEEDS THE STANDARDS FOR PRELIMINARY APPROVAL

The district court has broad discretion to approve Rule 23 class action settlements, and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998). In determining whether a settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *In re Heritage Bond Litigation*, 2005 WL 1594403 (C.D. Cal. June 10, 2005) (citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

Court approval involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval so that notice of the same can be disseminated, and then after notice is given to Class Members, whether final approval is warranted. *Manual of Complex Litigation*, Fourth, § 21.632 (2004); *Hanlon*, 150 F.3d at 1019. At the preliminary approval stage, the Court need only "determine whether the proposed settlement is within the range of possible approval." *True v. Am. Honda Motor Co*., 749 F.Supp.2d 1052, 1063 (C.D. Cal. 2010). The court's intrusion on what is otherwise a private consensual agreement negotiated between parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615, 625 (C.D. Cal. 1982).

At the outset, there is a "strong initial presumption that the compromise is fair and reasonable." *Hanlon,* 150 F.3d at 1019. A class action settlement is presumed to be fair when: (1) the settlement is reached through arm's length agreement; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; (3)

16

PLAINTIFFS' MEMORANDUM ISO THEIR MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 07-CV-08336-RGK-AFM

counsel is experienced in similar litigation; and (4) the percentage of objectors is small. Newberg & Conte, *Newberg On Class Actions*, 3d Ed. (1992) § 11.41

The Court's ultimate fairness determination will include balancing several factors, including some or all of the following:

> (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and [likely] duration of further litigation; (3) the risk of maintaining class [action status throughout the trial]; (4) the amount of the settlement; (5) investigation and discovery [completed]; (6) the experience and views of counsel; and (7) the reaction of class members.

*In re Skilled Healthcare Grp., Inc. Sec. Litig.*, 2011 WL 280991, at *2 (C.D. Cal. Jan. 26, 2011) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).

Not all of the above factors apply to every class action settlement, and one factor alone may prove determinative in finding sufficient grounds for court approval. *Nat'l Rural Telecommunication Cooperative v. DirecTv, Inc.*, 221 F.R.D. 523, 525-26 (C.D. Cal. 2004). As set forth below, it is clear that: (1) this settlement satisfies the criteria for preliminary approval; and (2) this Court should be entirely comfortable that it will subsequently easily satisfy the criteria for final approval.

The strength of Plaintiffs' case – Based on the Court's partial summary judgment rulings, Plaintiffs' case was strong, although the Court made clear that several burdens remained before Plaintiffs could prevail even before it decertified the class.

The risk, expense, complexity and likely duration of further litigation – This factor is also unquestionably met. At this time, the case is almost eleven years old. By the time the post-trial appeals on certification and liability would be completed, another two to three years would pass, and then the possibility of new trials or a certified case would trigger even more years of litigation. Thus, the risks and expenses of litigation would only continue to mount. Eleven years, and almost $500,000 in costs on the Plaintiffs' side alone, dictate that this multi-factor element is met.

The risk of maintaining class action status – The class was decertified.

The amount offered in settlement – As discussed above, the settlement amount in the amount of $15,000,000 is clearly a substantial payment, and not an amount that a

17

PLAINTIFFS' MEMORANDUM ISO THEIR MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 07-CV-08336-RGK-AFM

defendant who has just won decertification often offers to settle a case. It is a clear recognition of two key factors – the exposure to the Defendant if the decertification ruling was reversed by the Ninth Circuit, and the acknowledgment that the Plaintiffs and their counsel had the stamina and financial strength to see the case through to the end.

<u>The extent of discovery completed and stage of the proceedings</u> – All discovery was completed, and the Parties were prepared to "answer ready" for trial.

<u>The experience and views of counsel</u> – Here, seasoned class action litigators on both sides battled on for many years, through the district court, appellate court, and a Supreme Court petition. The Parties then finally reached this substantial settlement. The Parties have been locked in what can only be described as massive litigation for almost eleven years, and in the ten months the case has been before this Court, the pace and volume of the litigation has been intense. Counsel on both sides have obviously advised their clients that this settlement is fair, reasonable and adequate, and in the context of this case and its current posture, rational for both sides.

This factor often overlaps with the question of whether the settlement has resulted from arm's length negotiations, since the Ninth Circuit has long supported settlements reached through arms' length negotiation by capable opponents. In *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009), the Court expressly opined that courts should defer to the "private consensual decision of the [settling] parties." *Id.* at 965 (citing *Hanlon,* 150 F.2d at 1027). The primary reason for deferring to such settlements is the experience of counsel and the participation of a neutral, and in this case, with Mr. Rudy's multi-year involvement, both are present. This factor is therefore satisfied.

## VI.   NATURE AND METHOD OF CLASS NOTICE

"For any class certified under Rule 23(b)(3), the court must direct to settlement class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Here, the Parties have agreed upon a Notice which will be mailed to all last known addresses in the Defendant's records, updated as necessary. This is the most

18

PLAINTIFFS' MEMORANDUM ISO THEIR MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
Case No. 07-CV-08336-RGK-AFM

efficient and effective method for notifying class members.

As for the content of the notice, the proposed Notice meets all of the criteria set forth in Rule 23(c)(2). It informs prospective settlement class members of (i) the nature of the action; (ii) the definition of the settlement class certified; (iii) the class claims, issues, or defenses, and the settlement class period; (iv) that a class member may enter an appearance through counsel if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members under Rule 23(c)(3). It also informs them of their right to object, and how to do so. *See* Saltzman Decl., Exhibit 2. Plaintiffs ask that the Notice be approved.

## VII.   CLAIMS ADMINISTRATION

The Parties have agreed to the appointment of CPT, Inc., a highly experienced wage and hour class administration company, as the Claims Administrator. Saltzman Decl. ¶ 34. CPT estimates settlement administration will not exceed $80,000.

## VIII.   ATTORNEYS' FEES AND COSTS

The Settlement Agreement allows Class Counsel to apply for an award to be paid from the GSA established for the benefit of the settlement class, in an amount not to exceed one third (1/3) of the GSA, as well as costs and expenses not to exceed $500,000. This request is set forth in the proposed Notice. Class Counsel will file their motion for an award of fees and costs in a timely manner such that settlement class members will have fourteen days to review the same prior to the expiration of the time to object or opt out of this settlement.

Class Counsel recognizes that the "benchmark" for fee awards in this district is 25%. At the appropriate time in connection with the motion for approval of attorneys' fees, counsel will address the many reasons why this settlement justifies the additional amount requested, including the eleven years of devotion to this case and its novel issues; the large settlement, especially given the posture of the case; the average amounts being awarded; that the settlement calls for a completely non-reversionary payment,

where no claim forms are required; the thousands of hours expended on this matter by counsel; and the depth of the litigation. Importantly, a lodestar cross-check will amply support their request. At this time, Plaintiffs request only that the Court approve that the 1/3 fee request be included in the Notice to be mailed to the settlement class members so that they may comment on that aspect of the settlement should they so desire.

## IX.   SERVICE AWARD FOR NAMED PLAINTIFFS

The Settlement Agreement contemplates that the Plaintiffs will apply for a service award to be paid from the GSA in the amount of $15,000 each, and Defendant has agreed not to object to a request of up to that amount. The request for this award is disclosed in the proposed Notice. Once again, like their counsel, the Plaintiffs have stuck with the case, and the cause, for eleven grueling years, have been deposed, attended mediations, served as fiduciaries for the class, and subjected their good names to the negative impacts of the internet, such that all future prospective employers can easily determine that they have been class representatives in a suit against one of their employers. Plaintiffs will file their motion for these awards along with Class Counsel's application for fees and costs fourteen days before the objection deadline.

## X.   CONCLUSION

The Parties have reached this settlement following extensive litigation and arm's-length negotiations. Plaintiffs respectfully request that the Court permit and order the certification of the case for settlement purposes as requested herein, grant preliminary approval of the proposed settlement and enter the proposed Preliminary Approval Order submitted herewith, and award additional relief as this Court should deem proper.

DATED: October 1, 2018        **MARLIN & SALTZMAN, LLP**
                              **THE CULLEN LAW FIRM**

                        By: _s/  *Stanley D. Saltzman*_____
                              Stanley D. Saltzman, Esq.
                              Adam M. Tamburelli, Esq.

                              *Attorneys for Plaintiffs*